UNITED STATES of America, Appellee,

v.

Tamara Rae SHINDER, Appellant.

No. 93–2490.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1993.

Decided Nov. ·1, 1993.

Rehearing and Stay Denied Jan. 19, 1994.

Jeffrey S. Sheridan, Inver Grove Heights, MN, argued, for appellant.

Nathan P. Petterson, Asst. U.S. Atty., Minneapolis, MN, argued (Francis X. Hermann, U.S. Atty., on the brief), for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

LAY, Senior Circuit Judge.

Tamara Rae Shinder was convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1988) and sentenced to 60 months in prison. She now appeals both the judgment of conviction and the sentence. On appeal she claims there was insufficient evidence to sustain the conviction and that the trial court[1] misapplied the Sentencing Guidelines in rendering the sentence of 60 months imprisonment. We affirm.

Shinder asked a friend, Jill Miller, if she could have a package she was expecting addressed to Miller and sent to Miller's address. She told Miller that the package was being sent by a male friend and that she did not want her boyfriend to know about it. On October 21, 1992, a package was delivered to Miller's home address. The defendant was in Miller's home and signed for the package.

Based on investigative information showing probable cause, the Minnesota police had obtained a search warrant and, shortly after the package arrived, they executed the warrant to search Miller's house. They found the package next to Shinder, who was seated on a couch. At first she denied receiving the package, but then she amended her statement to say that she thought the package contained children's clothes which she was expecting from Los Angeles. The package had previously been intercepted by postal officials and found to contain 460 grams of cocaine with a purity of 89.9%. The Hennepin County Sheriff's Office Narcotic Unit had removed the cocaine, substituted a cocaine of lower purity as a precaution in case the controlled delivery failed, and then proceeded with the controlled delivery.

When Shinder received the package, she told the undercover postal inspector making the delivery that she was Jill Miller. She also provided a false address to the Hennepin County deputy who interviewed her. On appeal, Shinder asserts that the government failed to prove beyond a reasonable doubt that she had knowledge of the actual contents of the package.

It is settled law that a defendant's knowledge may be proven by circumstantial evidence. See United States v. Erdman, 953 F.2d 387, 390 (8th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). It is also a settled principle that this court must give the government, as the verdict holder, the benefit of all reasonable inferences that may be drawn from the evidence. United States v. Schubel, 912 F.2d 952, 955 (8th Cir.1990). Based upon the overall reading of the record, we find there was sufficient evidence to show Shinder's knowledge of the contents of the package.[2] We thus uphold Shinder's conviction.

---

1. The Honorable Paul A. Magnuson, United States District Court for the District of Minnesota.

2. Shinder also claims that the court erred in giving the instruction on circumstantial evidence. The trial court followed § 4.17 of the Model

Criminal Jury Instructions for the Eighth Circuit. We find that the given instruction was not error and that the defendant has not shown any prejudicial error in the court's refusing to give the defendant's proposed longer version of the same instruction.

The defendant also contends that the trial court failed to apply the Sentencing Guidelines properly to her case. She urges (1) that the trial court erred in denying a two-level reduction for acceptance of responsibility, (2) that the court erred in giving a two-level increase for obstruction of justice, and (3) that the court erred in denying the defendant a downward departure.

Much of the defendant's sentence rests upon defendant's post-conviction conduct. Shinder is a mother of five children ranging in age from three to seventeen years. After conviction, and despite the general statutory requirement of mandatory detention following a drug conviction, the trial court permitted Shinder to be released on her own bond. The trial court ordered that she report to the United States Pretrial Services on a weekly basis. The court also cautioned her as to the necessity of appearing for sentencing. At one of the resulting appearances before Pretrial Services, she tested positive for drugs. Shinder then stopped reporting to the Pretrial Services as scheduled, and she subsequently abandoned her family and fled to California. She was arrested on April 29, 1993, in California.

■ We hold that the defendant's flight to California after her conviction and prior to her sentencing was sufficient ground to deny the reduction for acceptance of responsibility. We further find no error in the trial court's determination that the defendant obstructed justice. A district court has broad discretion to apply the obstruction of justice provision of U.S.S.G. § 3C1.1. The defendant's flight was sufficient ground to find that she had obstructed justice.

The defendant claims that the district court abused its discretion in refusing to grant a downward departure below the applicable range under the Sentencing Guidelines. The defendant urges that the court believed it could not depart and therefore erred as a matter of law.[3] The record belies such a claim. The trial court failed to find any extraordinary reasons for departure under § 5H1.6, which reads in pertinent part: "Family ties and responsibilities ... are *not ordinarily* relevant in determining whether a sentence should be outside the applicable guideline range," U.S.S.G. § 5H1.6 (emphasis added).

The tragic circumstance of defendant's children having to be split up among Shinder's relatives, without a mother to care for their needs, is the main thrust of defendant's plea. There is no question the trial court was aware of these circumstances. Defendant makes it appear hard-hearted for the court to deprive her children of their mother. The defendant's post-conviction conduct, however, refutes this impression. The defendant chose to abandon her family when she went to California, and the record suggests that she did not intend to return had she not been apprehended by the Marshal there.

■ We have reviewed the entire record. We have no authority, however, to review the discretionary rulings of a trial judge in failing to depart. *United States v. Evidente*, 894 F.2d 1000, 1004 (8th Cir.), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). There is nothing in the record that suggests the trial court erroneously believed the defendant had to be sentenced pursuant to the statutory mandatory minimum. The court's record shows that it followed the sentencing procedures of the Sentencing Guidelines, found the proper range to be 50–61 months, and sentenced the defendant to 60

---

**3.** The defendant cites a post-sentence interview of the trial judge appearing in *City Pages*, a weekly Twin City newspaper, dated August 25, 1993. The trial judge at that time indicated he had sentenced Shinder pursuant to the five-year mandatory minimum. This record is not properly before the court and cannot assist defendant on appeal. The sentencing record and the judgment of the court clearly demonstrate that Shinder's commitment was made under the Sentencing Guidelines (which in a sense do provide mandatory limits depriving the court of its prior sentencing discretion). The trial court's recollec-

months, a period within that range.[4]

JUDGMENT AFFIRMED.

tion to a newsreporter cannot serve to substitute for the record this court reviews on appeal.

4. We note the court did give the defendant a four-level deduction under § 3B1.2 for being a minimal participant in the crime.

Also, the defendant had been warned by the trial court upon her release pending sentencing that if she did not appear, she could be subject to further criminal charges. At sentencing, however, before applying the enhancement for obstruction of justice, the court asked for and received a commitment from the United States Attorney that the government would not pursue a bond jumping charge.