**UNITED STATES of America, Appellee,**

v.

**Linda L. DEFEO, Defendant–Appellant.**

**No. 1493, Docket 93–1679.**

United States Court of Appeals,
Second Circuit.

Argued June 30, 1994.

Decided Oct. 5, 1994.

William B. Darrow, Asst. U.S. Atty., Burlington, VT (Charles R. Tetzlaff, U.S. Atty., D. of Vt., David V. Kirby, Chief, Crim. Div., on the brief), for appellee.

Thomas J. Donovan, Burlington, VT, for defendant-appellant.

Before: KEARSE and ALTIMARI, Circuit Judges, and SCHWARTZ, District Judge *.

KEARSE, Circuit Judge:

Defendant Linda L. Defeo appeals from a judgment of the United States District Court for the District of Vermont, Fred I. Parker, *Chief Judge*, convicting her, after her plea of guilty, of conspiring to transport stolen goods in interstate commerce, in violation of 18 U.S.C. § 371 (1988). The court sentenced Defeo principally to 46 months' imprisonment, to be followed by three years' supervised release. On appeal, Defeo challenges various aspects of the court's calculation of her sentence under the 1992 federal Sentencing Guidelines ("Guidelines"), including its consideration of conduct in which she engaged prior to being sentenced in state court for another offense. For the reasons below, we affirm.

## I. BACKGROUND

### A. *The Events*

In March 1992, Defeo and a codefendant were arrested in Colchester, Vermont, in a car containing $13,780 worth of stolen merchandise. Defeo told arresting officers that she and her codefendant had stolen the merchandise from retail stores in Vermont and were returning to Boston, Massachusetts, to sell it. A complaint was filed in the district court in Vermont, charging Defeo and her codefendant with conspiracy to transport stolen goods in interstate commerce, and in July she was indicted on that charge. After her initial court appearance, Defeo was released on bond, subject to the conditions, *inter alia*, that she complete a three-month drug rehabilitation program for heroin addiction and report regularly to the federal pretrial services office in Boston. Her trial was scheduled to begin on December 1, 1992.

On December 1, when Defeo had failed to appear by midday, the court issued a warrant for her arrest. Defeo arrived, on her own, later in the day. A jury was empaneled, and

opening arguments were scheduled to begin the next day. On the following morning, however, Defeo changed her plea to one of guilty. The district court released her until sentencing, on the conditions, *inter alia*, that she report to the Boston pretrial services office three times a week and engage in no unlawful conduct.

Thereafter, the pretrial services office informed the United States Probation Office in Vermont, which was preparing a presentence report ("PSR") on Defeo, that in January 1993 Defeo had twice tested positive for morphine, an indication of heroin use. In addition, on February 4 Defeo was caught attempting to smuggle into the pretrial services office an uncontaminated urine sample to substitute for her own. A sample of Defeo's own urine taken on that date tested positive for heroin. After this incident, Defeo ceased reporting to pretrial services, moved from her listed address, and could not be found.

On February 11, 1993, the district court, on the government's motion, revoked Defeo's release and issued a warrant for her arrest. Defeo remained a fugitive until June 1993, when she was arrested. At that time, she was found to be in possession of 11 bags of single-dose quantities of heroin.

### B. *The Presentence Report*

In an interview for her PSR, Defeo told the probation office that she had begun shoplifting in 1985 or 1986, and that from then until sometime in 1990, she had stolen merchandise from stores every day. She stated that during the two years immediately prior to her 1992 arrest on the present charges, however, she had "worked" only four days a week, making excursions to New Hampshire, Maine, or Vermont and stealing merchandise from an average of seven stores a day. She brought the goods back to Boston and sold them to a fence for some 25 to 35 percent of their retail value, receiving between $200 and $2,200 a day, averaging $500 to $600.

Defeo had on her record approximately 40 prior convictions for, *inter alia*, larceny, re-

---

* Honorable Allen G. Schwartz of the United States District Court for the Southern District of New York, sitting by designation.

ceiving stolen property, prostitution, forgery, and theft. Her most recent conviction had been in Vermont state court; she had pleaded guilty on January 14, 1992, to a charge of felony theft based on similar shoplifting conduct (the "state offense").

In calculating Defeo's offense level under the Guidelines, the PSR deemed the period of her relevant offense conduct to have begun on January 14, 1992, the date of her plea of guilty on the state charge, and to have ended on March 15, 1992, the date of her arrest for the present offense. Based on Defeo's description of her four shoplifting excursions a week during that period, the PSR calculated that the trips resulted in thefts averaging some $1,429 worth of merchandise per trip and that the losses sustained by merchants during those eight weeks thus totaled $45,728. The PSR concluded that Defeo's enhanced offense level under Guidelines §§ 2B1.2(b)(1) and 2B1.1(b)(1)(H) was 11.

The PSR recommended upward adjustments in offense level, including a two-step increase pursuant to Guidelines § 3C1.1 for obstruction of justice based on Defeo's failure after February 4 to report to pretrial services. These adjustments resulted in a total offense level of 15. The PSR recommended against a downward adjustment for acceptance of responsibility, citing Defeo's continued criminal conduct, her failure to report to pretrial services, and the lateness of her plea of guilty.

The PSR initially attributed to Defeo 14 criminal history points, based on her record of prior convictions. In addition, it found that she had committed the present offense while on probation in connection with her state offense. The PSR noted that the order of probation required Defeo to make contributions to a fund for victims and that in imposing that requirement the state judge said that Defeo was to be discharged from probation upon payment of all contributions. State court records indicated that Defeo had made the required payments by February 24, 1992; the state-court docket sheet, however; contained no indication of her discharge from probation except a handwritten note, "Discharged 3/23/92" (underlining omitted). On the basis of this notation, the PSR concluded

that Defeo was still on probation when she was arrested on the present charge on March 15, and it therefore recommended the addition of two criminal history points pursuant to Guidelines § 4A1.1(d). With 16 criminal history points, Defeo was in criminal history category VI. The resulting imprisonment range prescribed by the Guidelines was 41–51 months.

## C. *The Sentencing Hearing*

As discussed in Part II below, Defeo challenged the PSR's conclusions that her presentencing conduct amounted to obstruction of justice, that she should be denied a downward adjustment for acceptance of responsibility, and that she had committed the present offense while on probation for the state offense. The court rejected all of these contentions.

Defeo also disputed the PSR's calculation of the losses suffered by her victims. At her sentencing hearing, she contended that the proper period for calculation of those losses began on February 4, 1992, the date on which she was sentenced on her state offense, rather than on January 14, the date on which she pleaded guilty. In addition, Defeo testified that she had erred in describing to the probation office her stealing activities in the two years preceding her federal arrest. Following that interview, she recalled that she had had no car of her own during the last eight months of that period and hence had made not four trips a week but only one. And she testified that during those eight months the value of the goods stolen averaged not $1,429 per trip but only $1,000 to $1,200 per trip.

The district court credited this testimony. However, it also decided that the period of Defeo's relevant conduct began on October 28, 1991, the date on which Defeo was arrested for the state offense, rather than on the date of her state-court sentencing or of her plea of guilty. The court found that the losses resulting from Defeo's illegal conduct thus totaled approximately $25,000, giving her, with all enhancements and adjustments, an offense level of 14. Given a criminal history category of VI, the Guidelines-recommended imprisonment range was 37–46

months. The district court sentenced Defeo to the top of that range.

## II. DISCUSSION

On appeal, Defeo pursues the contentions she made in the district court. We find in her contentions no basis for reversal.

### A. *Amount of Loss*

The Guidelines require the sentencing court, in calculating a defendant's offense level, to take into account, *inter alia*, "all acts ... that were part of the same course of conduct or common scheme or plan as the offense of conviction," Guidelines § 1B1.3(a)(2), and, for theft offenses, the value of the property taken, *id.* § 2B1.1(b). Even if acts would otherwise be deemed relevant conduct, however, the court is not to consider them if they are "associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense (the offense of conviction)." *Id.* § 1B1.3 Application Note 8. This restriction is designed to avoid having criminal conduct that was relied on in setting the prior sentence used in determining the later sentence. *Cf. United States v. McCormick*, 992 F.2d 437, 440–41 (2d Cir.1993) (neither Congress nor Sentencing Commission "intended to allow a defendant to be prosecuted for conduct already used to enhance his or her offense level").

Defeo contends that the district court erred in determining that the appropriate period for calculating the amount of loss caused by her relevant conduct began on October 28, 1991, the date on which she was arrested for the state offense, rather than on February 4, 1992, the date on which she was sentenced for that offense. She argues that in imposing its sentence, the state court could have taken into account all of her theft activity up to that time. Defeo made no showing, however, that the state court took her postarrest theft activity into account in setting her state sentence. Indeed, she made no showing that that court was even aware that she had persisted in her unlawful conduct following her arrest. Accordingly, we see no basis for a ruling that Defeo's conduct after her state arrest was "associat-

ed with" the state-court sentence, and we find no error in the district court's determination that the relevant period for calculating the loss caused by Defeo's conduct began on October 28, 1991.

### B. *Obstruction of Justice*

The Guidelines provide for a two-step increase in offense level if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Guidelines § 3C1.1. The adjustment is appropriate only upon a finding that the defendant had the "specific intent to obstruct justice, *i.e.*, that the defendant consciously acted with the purpose of obstructing justice." *United States v. Rivera*, 971 F.2d 876, 894 (2d Cir. 1992) (internal quotes, emphasis and brackets omitted).

Under the Guidelines, "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness," Guidelines § 3C1.1 Application Note 2, and includes "escaping or attempting to escape from custody before trial or sentencing[ ] or willfully failing to appear, as ordered, for a judicial proceeding," Guidelines § 3C1.1 Application Note 3(e). Flight from pretrial services between conviction and sentencing warrants an obstruction enhancement. *See, e.g., United States v. Shinder*, 8 F.3d 633, 635 (8th Cir. 1993); *United States v. McCarthy*, 961 F.2d 972, 979–80 (1st Cir.1992); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990).

The district court found that Defeo's four-month failure to report to pretrial services, from February 4, 1993, until she was rearrested in June of that year, was comparable to an escape from custody and was ground for the two-step increase envisioned by Guidelines § 3C1.1. Defeo argues that the obstruction-of-justice adjustment was inappropriate because her fugitive status did not delay sentencing and was not intended to obstruct justice. She testified, *inter alia*, that she had stopped reporting to the pretrial services office and had abandoned her

known residence because she was afraid that her release would be revoked.

Defeo's explanations support, rather than undermine, the conclusion that Defeo willfully obstructed the administration of justice. Defeo had been released from custody on the conditions that she undergo rehabilitation for drug use, engage in no unlawful conduct, and report regularly for testing to permit verification that she had stopped using drugs. According to her own testimony, she absconded in February 1993 precisely in order to prevent her release conditions from being enforced. And plainly her attempt to smuggle into the pretrial services office an uncontaminated urine sample to be submitted in place of her own revealed her effort to prevent detection of her violation of the conditions of release. We see no error in the two-step increase in offense level for obstruction of justice.

## C. *Acceptance of Responsibility*

█ The Guidelines authorize the sentencing court to grant a two-step decrease in offense level to a defendant who "clearly demonstrates acceptance of responsibility for his offense." Guidelines § 3E1.1(a). Entry of a plea of guilty does not assure a defendant of such a reduction. *See id.* § 3E1.1 Application Note 3 ("defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right"). The court may deny such credit if it determines, for example, that the defendant's claim that she accepted responsibility for the offense of conviction is not credible, *see, e.g., United States v. Reyes,* 9 F.3d 275, 280 (2d Cir.1993), or determines that the defendant has engaged in continued criminal conduct that bespeaks "a lack of sincere remorse," *United States v. Cooper,* 912 F.2d 344, 346 (9th Cir.1990). The Guidelines state that it is rare that a defendant should be granted a reduction in offense level for acceptance of responsibility when the court has deemed it appropriate to increase her offense level for obstruction of justice. *See* Guidelines § 3E1.1 Application Note 4 (except in "extraordinary cases," conduct resulting in an enhancement for obstructing the administration of justice "indicates that the defendant

has not accepted responsibility for his criminal conduct"). Because the sentencing court is in a unique position to evaluate a defendant's acceptance of responsibility, its determination "is entitled to great deference on review," Guidelines § 3E1.1 Application Note 5, and will "not be disturbed unless it is without foundation." *United States v. Moskowitz,* 883 F.2d 1142, 1155 (2d Cir.1989) (internal quotations omitted).

█ The district court's refusal to grant Defeo such credit was amply supported not only by her 11th hour plea of guilty, but also by her failure to report to pretrial services, her continued use and possession of heroin, and her attempt to pass off another person's urine as her own in order to avoid detection of her continued use of heroin. We cannot fault the district court's conclusion that she had not accepted responsibility for her conduct.

## D. *Criminal History*

█ Defeo also pursues her contention that the district court erred in adding two points to her criminal history calculation for commission of the present offense while she was on probation for her state offense, giving her a total of 16 criminal history points. The government argues that Defeo remained on probation until she was officially discharged, as indicated by the state-court docket entries, on March 23. Defeo argues that since the state court had ordered that she be on probation until she made the required contributions, and the state-court records show that she completed those payments on February 24, she was as of that date no longer on probation and should not be penalized for the tardiness of the state-court clerk in formally documenting her discharge from probation.

We need not resolve this controversy. A defendant is placed in criminal history category VI when her criminal history points total "13 or more." Guidelines Ch. 5 Pt. A, Sentencing Table. Since even without the two points in question Defeo's criminal history points would have totaled 14, her criminal history category would have remained VI in any event.

## CONCLUSION

We have considered all of Defeo's arguments on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.