73 F.3d 374
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel Raymond FREAD, also known as Butch Fread Defendant-Appellant.
 No. 95-6199
 United States Court of Appeals, Tenth Circuit.
 Dec. 29, 1995.
 
 Before BRORBY, EBEL, and HENRY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 EBEL, Judge
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Appellant Samuel Raymond Fread ("Fread") appeals a sentence which included a two-point enhancement for obstructing justice pursuant to U.S.S.G 3C1.1. Fread argues the act relied upon by the district court for the imposition of the enhancement does not constitute an obstruction of justice. We disagree and affirm Fread's sentence.
 
 
 3
 On February 10, 1995, Fread was arraigned on charges of: (1) engaging in sexual acts with a minor, in violation of 18 U.S.C. 2243(a); (2) possessing a firearm, in violation of 18 U.S.C. 922(g)(1); and (3) possessing ammunition, in violation of 18 U.S.C. 922(g)(1). Following a detention hearing, the district court ordered Fread released on conditions, including a condition that he submit to a thirty day inpatient drug treatment program at Drug Recovery, Inc. ("DRI"). Fread's release was also conditioned upon his travel being restricted to the Western District of Oklahoma, unless otherwise approved by the United States Probation Office.
 
 
 4
 On March 7, 1995, Fread entered a guilty plea to Count One, statutory rape, with an agreement that the remaining counts would be dismissed at sentencing. Fread was then released to DRI again, on condition that he remain an additional thirty days. On April 12, 1995, the probation officer recommended that Fread go to the DRI Halfway House after successfully completing the sixty day program. Over Fread's objection and his request to be returned to the community, the district court ordered him to reside in the Halfway House while awaiting sentencing. He was told to follow all the rules of the Halfway House, and was permitted to leave during the day to look for work.
 
 
 5
 On April 12, 1995, Fread requested permission to leave the Halfway House in order to look for a job. He gathered his belongings out of the house and brought them to his girlfriend's house. Fread and his girlfriend then drove to San Diego, California, leaving a note for his girlfriend's parents that they had gone to Arkansas. Fread was subsequently arrested pursuant to a bond violator's warrant and was returned to the Western District of Oklahoma.
 
 
 6
 At sentencing, over Fread's objections, the district court applied a two-level upward adjustment pursuant to U.S.S.G. 3C1.1 (Obstructing or Impeding the Administration of Justice) because Fread absconded from the DRI Halfway House without permission.[2] The district court also denied Fread a reduction for acceptance of responsibility under U.S.S.G. 3E1.1. Fread does not dispute that he absconded from the DRI Halfway House and was arrested in California while awaiting sentencing. Fread argues on appeal, however, that there is no precedent in this circuit for applying the obstruction adjustment to a defendant under this set of facts. We review the district court's legal interpretation of the sentencing guidelines de novo, United States v. Rice, 52 F.3d 843, 848 (10th Cir.1995); factual determinations are reviewed for clear error, United States v. Diggs, 8 F.3d 1520, 1526 (10th Cir.1993).
 
 
 7
 The United States Sentencing Guidelines permit the district court to enhance a defendant's offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. 3C1.1. The commentary to 3C1.1 sets forth a "non-exhaustive" list of examples of the types of conduct to which this enhancement applies. Application Note 3(e) states that "escaping or attempting to escape from custody before trial or sentence" falls within the definition of obstructing or impeding conduct, as well as "willfully failing to appear, as ordered, for a judicial proceeding." Application Note 4(d) provides that merely "avoiding or fleeing from arrest" does not warrant application of an enhancement under 3C1.1.
 
 
 8
 The district court in this case enhanced Fread's sentence under 3C1.1, stating that the provision:
 
 
 9
 [G]ives what they describe as a non-exhaustive list of the types of conduct to which the enhancement applies, and I can't imagine a more appropriate situation to increase by two levels for obstruction of justice than a person who violates the terms of the court order and flees and requires the FBI and other government agencies to find him, and interferes with the administration of this government by requiring someone to find him.
 
 
 10
 R.O.A. Vol. II, Trans. of Sent. at 11. In denying the Acceptance of Responsibility reduction under U.S.S.G. 3E1.1, the district court said, "to me, part of acceptance of responsibility is coming forward and being ready to be--accept the consequences of your act and obviously he did not do that." Id.
 
 
 11
 THE COURT: What happened? You know, it was a close question, my letting you continue at the Halfway House, but I did, and you just kind of thumbed your nose at me. Why did you do that?
 
 
 12
 THE DEFENDANT: I just got scared.
 
 
 13
 THE COURT: Didn't you know you'd get caught?
 
 
 14
 THE DEFENDANT: Well, yeah, but it wasn't even that. From what I understand, there was other people looking for me for other things.
 
 
 15
 It wasn't even that.
 
 
 16
 Id. at 13.[3] Fread argues on appeal that the district court erred because he neither escaped "from custody" nor "failed to appear" as ordered for a judicial proceeding. He simply violated the conditions of his release. He further suggests that his conduct is more properly characterized as "avoiding or fleeing from arrest," conduct which is not considered an obstruction of justice under 3C1.1. See U.S.S.G. 3C1.1, Application Note 4(d).
 
 
 17
 Fread refers to our decision in United States v. Amos, 984 F.2d 1067 (10th Cir.1993), wherein we held that defendant Amos' attempts to escape from the Oklahoma County Jail while awaiting sentencing on federal charges constituted obstructive conduct cognizable under 3C1.1. Amos, 984 F.2d at 1072. In Amos we relied on Application Note 3(e) which provides that escaping or attempting to escape from custody before trial or sentencing is an example of conduct to which the obstruction enhancement applies. Id. Fread essentially argues that Amos does not apply to him because he was not in "custody" at the time he absconded from the DRI Halfway House, and that none of the application notes refer to violating conditions of release as a basis for applying the obstruction of justice adjustment.
 
 
 18
 First, we note that our review of Fread's challenge to the application of 3C1.1 to his conduct starts with the language of the section itself and is not foreclosed by Fread's reference to the non-exhaustive list of examples in the section's Application Notes. Section 3C1.1 requires that we determine whether Fread "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Under the Guidelines, "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." U.S.S.G. 3C1.1, Application Note 2. The Second Circuit, in United States v. Defeo, 36 F.3d 272 (2d Cir.1994), held that flight from pretrial services between conviction and sentence warrants an obstruction enhancement. Id. at 276. We agree.
 
 
 19
 In Defeo, the defendant pleaded guilty to conspiring to transport stolen goods in interstate commerce. Id. at 274. She was then released until sentencing, on the conditions, inter alia, that she report to the Boston pretrial services office three times a week for drug rehabilitation and engage in no unlawful conduct. Id. She later ceased reporting to pretrial services, moved from her listed address, and could not be found. Id. At sentencing, the district court found that Defeo's four-month failure to report to pretrial services until she was rearrested "was comparable to an escape from custody and was ground for [a] two-step increase envisioned by Guidelines 3C1.1." Id. at 276. The Second Circuit saw no error in the district court's two-step increase for obstruction of justice under these circumstances. Id. at 277.
 
 
 20
 Other circuits have taken a similar view. See United States v. Shinder, 8 F.3d 633, 635 (8th Cir.1993)(defendant's failure to comply with condition of release prior to sentencing that she report to Pretrial Services, and her subsequent flight to another state was sufficient ground to find she had obstructed justice); United States v. Perry, 908 F.2d 56, 59 (6th Cir.), cert. denied, 498 U.S. 1002 (1990)(two-level increase under 3C1.1 was appropriate where defendant jumped bond before sentencing and was not apprehended until almost a year later, even where no sentencing date had been set at the time defendant fled). Following this rationale, we conclude that the record in this case supports the district court's two-level enhancement for obstruction of justice. Fread violated the condition of his release requiring him to reside at the DRI Halfway House and abide by its rules, as well as the condition restricting his travel to the Western District of Oklahoma. Furthermore, the fact that Fread absconded from DRI without leaving a forwarding address or telephone number indicates he did not intend to comply with the condition requiring him to undergo drug and alcohol screening as directed by Pretrial Services. His disappearance also put his timely sentencing in jeopardy. While a sentencing date had not been set at the time Fread absconded from DRI, his violating the conditions of his release and moving out of state necessitated a warrant for his arrest and return to Oklahoma by federal agents in order to assure his appearance at sentencing. See Perry, 908 F.2d at 59 (the fact that a sentencing date had not been set did not negate the presumption that the defendant should have known he was not free to "decamp" after his conviction). The fact that Fread allegedly did not engage in any new criminal conduct while awaiting sentencing does not change our conclusion that his violating the conditions of his release and his absconding from the DRI Halfway House evidenced an intention on his part to obstruct or impede the administration of justice prior to sentencing in this case.
 
 
 21
 Finally, Fread cites U.S.S.G. 3C1.1, Application Note 4(d), which provides that "avoiding or fleeing from arrest" is an example of conduct which is not to be considered as obstruction of justice. Application Note 4(d), however, does not apply to the facts of this case. Fread had already been arrested, he had pleaded guilty and was awaiting sentencing. "[T]he 3C1.1 enhancement does not apply to persons engaged in criminal activity who learn of an investigation into that activity and simply disappear to avoid arrest." United States v. Alpert, 28 F.3d 1104, 1107 (11th Cir.1994). Such is not the case here.
 
 CONCLUSION
 
 22
 Based on the foregoing discussion, we AFFIRM Fread's sentence. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Fread's Presentence Report noted that he had absconded from DRI but did not enhance Fread's offense level for obstruction of justice. Neither Fread nor the government objected to this report. The district court raised the issue at the sentencing hearing
 
 
 [3]
 The record does not indicate who these "other people" were who Fread feared were looking for him