**UNITED STATES of America**

**v.**

**Roberto POLANCO, Defendant.**

**No. 98 CR. 276(JSR).**

United States District Court, S.D. New York.

Feb. 10, 1999.

Meir Feder, Assistant United States Attorney, New York, NY, for plaintiff.

Yuanchung Lee, Legal Aid Services, New York, NY, for defendant.

## *OPINION*

RAKOFF, District Judge.

The Federal Sentencing Guidelines are like a Victorian corset around the body of Lady Justice. Its complicated design of laces, braces, buckles and bows make it devilishly difficult to put on and even more difficult to undo. Though it comes in a range of sizes, none of them feels right. Worst of all, its rigid stays that are supposed to shape Justice in whatever form is fashionable so pinch and distort her natural contours as to cause permanent damage to her health.

Still, as the Guidelines are the law of the land, it is the courts' duty to make them fit as best we can.

One of the potentially deleterious consequences of the Guidelines is their tendency to remove police and prosecutorial conduct from judicial scrutiny by unduly penalizing those whose challenges to such conduct prove unsuccessful. Thus, a defendant who seeks a suppression hearing by proffering an affidavit that alleges police misconduct must reckon with the likelihood that if his account is discredited his punishment level will be substantially increased.

This issue arose in the instant case after the defendant, following his unsuccessful attempt to suppress certain of the evidence against him, pleaded guilty to two felony counts involving his participation in an aborted robbery of narcotics. In connection with his sentencing, the Government objected to the Probation Office's calculation of an offense level of 29, which, given defendant's clean prior record, would have resulted in a sentencing range of 87 to 108 months. Arguing that the affidavit the defendant had proffered in order to trigger the suppression hearing was false, the Government maintained that defendant's submission of the affidavit mandated both a two-level upward enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 [1] and the elimination of the defendant's two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a).[2] *See* Govt. Let. Br. Dated 1/21/99 at 1. The result would be a recalculated offense level of 33 and a new sentencing range of 135 to 168 months, a more than 55% increase over the otherwise applicable range. *See* U.S.S.G. § 5A, Sentencing Table.

While the Government could not cite a precedent exactly on point, the thrust of several prior Second Circuit decisions supported its position. *See, e.g., United States v. Martinez–Rios,* 143 F.3d 662, 678 (2d Cir.1998) (upholding enhancement for submission of false affidavit in connection with sentencing); *United States v. Giraldo,* 80 F.3d 667, 679 (2d Cir.1996) (upholding enhancement for perjury at a suppression hearing); *United States v. Defeo,* 36 F.3d 272, 277 (2d Cir.1994) (acceptance of responsibility adjustment is generally not warranted where a defendant commits obstruction). In the end, however, the Court chose to reject the Government's position, and, instead, accepted the Probation Officer's calculation and imposed a sentence of

---

1.  Section 3C1.1 of the Sentencing Guidelines requires a two offense-level enhancement in cases where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense." U.S.S.G. § 3C1.1. The provision applies to, among others, defendants who willfully provide "materially false" information to a judge. *Id.* Application Note 4(f).

2.  Section 3E1.1(a) of the Sentencing Guidelines provides for a two-level downward adjustment "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The entry of a guilty plea does not automatically qualify a defendant for such an adjustment. *See id.* Application Note 3.

95 months.[3] Essentially this was because the Court concluded that the need not to chill a defendant's freedom to assert his constitutional rights constrained the Court from penalizing a defendant for submitting a misleading affidavit unless the affidavit were proven to be literally, wilfully, and materially false.

■ This cautious approach is not without support in the commentary to the obstruction guideline itself, which states that the enhancement is not intended to "punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1 Application Note 2. In seeking to vindicate rights under the Fourth or Fifth Amendments, a defendant is required to submit a sworn affidavit in order to obtain a suppression hearing. *See, e.g., United States v. Vasta,* 649 F.Supp. 974, 986 (S.D.N.Y.1986), *citing United States v. Gillette,* 383 F.2d 843, 848–49 (2d Cir.1967). Having served this purpose, the affidavit effectively drops from sight, since it is rarely, if ever, considered by a judge in assessing the evidence at the suppression hearing.[4] Moreover, the defendant, not wishing to expose himself to cross-examination about the underlying offense, rarely takes the stand at the suppression hearing.

As a result, most suppression hearings are focused solely on scrutinizing police testimony (and, thereby, police conduct at the time of the arrest). More often than not, the police testimony will be found credible. But if, as the Government here urges, this determination effectively mandates a finding that the defendant's submission of his contrary affidavit was an obstruction of justice warranting enhanced punishment, the result will be to discourage even truthful defendants from exercising Fourth and Fifth Amendment rights and thereby further insulate police conduct from judicial scrutiny. A court should therefore act with caution before inviting such a result.

Here, the Complaint on which the defendant was arrested stated that New York City police officer Timothy Murphy, upon receiving a report of a robbery at 101 Post Avenue in Manhattan, went to the scene and observed defendant (and two others) descending from a fire escape outside the building, after which the police officer chased, caught, and arrested him. *See* Compl. ¶¶ 4,7,8. Following indictment, the defendant moved to suppress incriminating items seized from him at the time of arrest, on the ground that the police lacked probable cause to arrest him. In support of the motion, and as a basis for seeking an evidentiary hearing thereon, the defendant submitted a sworn affidavit in which he declared, *inter alia,* that he "did not descend from a fire escape *shortly* before [he] was arrested" and that he was "walking" by himself when he was apprehended. Govt. Let. Br. Ex. A, Amended Aff. of Roberto Polanco ¶¶ 4–5 (emphasis added). The Government contends that these quoted statements conflict with officer Murphy's testimony at the suppression hearing, and that, since the Court chose to credit officer Murphy's testimony, it follows that the defendant's statements were false.

At the hearing, officer Murphy had testified that on February 26, 1998, after responding to a report of a robbery at 101 Post Avenue, he had observed three men (one of whom turned out to be the defendant) descending from the building's fire escape, after which the three men began

---

3. While the reasons for this determination were stated on the record at the sentencing hearings of January 22, 1999 and January 28, 1999, *see* transcripts, the Court further stated that it would issue this written opinion to elaborate the basis for its decision.

4. While an argument can be made that a suppression hearing is not among those proceedings exempt from the Federal Rules of Evidence, *see* Fed.R.Evid. 1101; Fed. R.Crim.P. 12, at least one Circuit has held to the contrary. *See United States v. Lee,* 541 F.2d 1145, 1146 (5th Cir.1976). Nonetheless, in practice, the self-serving affidavit of the moving defendant is usually disregarded if he declines to testify at the hearing.

walking in the direction of Murphy's vehicle. *See,* transcript, June 22, 1998 at 20. When they got close enough to observe Murphy, the men turned and ran in the opposite direction. *See id.* at 20–21. Officer Murphy then gave chase, first following the suspects in his vehicle and then stopping the car, exiting, and pursuing them on foot. *See id.* at 21–22. When the officer saw one of the suspects, co-defendant Javier Alcantara–Soler, enter a courtyard adjacent to a building, he chose to pursue Alcantara–Soler, temporarily losing sight of the defendant, who followed a different route. *See id.* at 22, 24. He then drew his gun, approached the courtyard, and, after realizing that Alcantara–Soler was cornered, called to his sergeant for assistance. *See id.* Only after he had stopped Alcantara–Soler, and had waited for the sergeant to arrive and take over, did Murphy resume his pursuit of the defendant. *See id.* at 24. Hearing sounds from the general direction of an alleyway into which he had previously seen the defendant run, Murphy proceeded to the alley, where he eventually found and apprehended the defendant. *See id.*

■ Murphy's testimony thus indicates that between the time of the defendant's descent from the fire escape and the time of his eventual arrest, there intervened a car chase, a foot chase, the apprehension of Alcantara–Soler, time spent waiting for the sergeant to arrive, and the subsequent search for the defendant in a different location. Given these numerous intervening events, and the absence of any evidence of how little or how long they took, the Court cannot conclude that the Government has proven by a preponderance of the evidence that the defendant was arrested *"shortly"* after climbing down from the fire escape.[5]

5. The Government bears the burden of proving that the defendant should be given an upward adjustment for obstruction of justice, while the defendant bears the burden of proving that he qualifies for a downward adjustment for acceptance of responsibility. In

As to the other alleged false statement—that the defendant was "walking" by himself when apprehended—there is again no directly conflicting evidence in the record. The defendant was alone at the moment he was arrested and had apparently stopped running, since a gate was impeding his progress. *See id.* at 24–25. Thus, like the defendant's comment about the fire escape, this statement appears to have been literally true, even if objectively misleading.

■ The legal question thus presented is whether a literally true but misleading statement in a defendant's affidavit submitted in support of a request for a suppression hearing may form the basis for an obstruction enhancement under Section 3C1.1. While the issue is not free from doubt, the Court, on the basis of the policy concerns previously discussed applied to the particular circumstances of this case, concludes that it does not.

■ In addition, however, even if the guideline applied to misleading statements—or, for that matter, even if the defendant's statements were not just misleading but demonstrably false—the Court would still not impose the obstruction enhancement in this case because the Government has not established, as it must, that the statements were made willfully, with the specific intent to obstruct justice. *See United States v. Thomas–Hamilton,* 907 F.2d 282, 285 (2d Cir.1990).

The mere fact that the defendant's statements were objectively misleading does not necessarily imply that he intended to mislead. Indeed, officer Murphy's own Complaint in this case illustrates how easy it is for a person to unwittingly create a misleading impression. The Complaint states that after seeing the defendant descend from the fire escape, the officer

either case, the burden of proof is a preponderance of the evidence. *See United States v. Cassiliano,* 137 F.3d 742, 747 (2d Cir.1998); *United States v. Jones,* 900 F.2d 512, 521 (2d Cir.1990).

"chased and apprehended" him. Compl. ¶¶ 7,8. It makes no mention of the many intervening events described above, including the fact that Murphy lost sight of the defendant while pursuing his accomplice. By omitting mention of these events, the Complaint collapses time and misleadingly suggests that the defendant was apprehended after a brief pursuit in which he was continuously observed. This misleading impression is one a police officer would have a motive to create, given that it would buttress a claim of probable cause. Nevertheless, it is clear to the Court that Murphy did not willfully seek to mislead. Having had the opportunity to observe the officer's demeanor as he responded to questions at the suppression hearing, the Court concludes that any conflict between the Complaint and the officer's testimony was unintentional, the probable result of hurriedly signing-off on a document prepared by another.

But if officer Murphy—who is educated, English-speaking, and familiar with the vagaries of the criminal process—can unwittingly create a false impression by endorsing a document prepared by another, it follows *a fortiori* that the defendant, who has limited education, speaks no English, and signed an English-language affidavit written by his attorney and translated for the defendant, might likewise have done so without an intent to mislead.[6] Since the defendant did not testify, the Court did not have the benefit of observing demeanor and responsiveness, factors that might (as with officer Murphy) have been dispositive on the question of willfulness. Given the inadequacy of the record in this regard, and mindful of the Guidelines' instruction that courts "should be cognizant that inaccurate testimony or statements sometimes may result from confusion [or] mistake,"

*see* U.S.S.G. § 3C1.1 application note 2, the Court concludes that willfulness has not been proven by a preponderance of the evidence.

■ Finally, the Court finds that even if the defendant's statements had in fact been false *and* even if the Government had met its burden of proving willfulness, the obstruction enhancement would still be inapplicable because the statements could not be said to be *materially* false. As previously noted, a defendant's affidavit submitted in support of a motion to suppress functions more like a necessary pleading, qualifying the motion for an evidentiary hearing but rarely considered at the hearing itself. Certainly it was not considered by the Court here on any issue except whether the defendant's motion qualified for an evidentiary hearing. On *that* issue, what was material was neither of the specific statements the Government now alleges were false, but rather the other statements in the affidavit not here challenged by the Government, as well as the question raised, by the Court's own comparison of the affidavit with the Complaint, as to whether officer Murphy had the defendant under continuous surveillance and therefore had a basis for inferring that the man he arrested in the alleyway was one of the men he saw descending the fire escape. These considerations, in no way implicated by the allegedly false statements in defendant's affidavit, were what led the Court to convene an evidentiary hearing.

Accordingly, the Government has failed to prove that the allegedly-obstructive statements in defendant's affidavit were either literally, willfully, or materially false (let alone all of these things). There is thus no basis to impose an upward enhancement for obstruction of justice under

---

**6.** Indeed, language difficulties alone may have been responsible for any misleading impression that was created. The affidavit in question is written in English, and was apparently translated not by a certified translator but by a lawyer whose command of Spanish may or may not have been adequate to the task. *See* transcript, January 28, 1999. It thus seems possible that use of the word "shortly" was simply the result of mistranslation—that the Spanish synonym more closely approximated "immediately," which, if translated correctly, would not have resulted in any misimpression.

Section 3C1.1 of the Sentencing Guidelines. Since, therefore, the defendant did not obstruct justice, there is likewise no compelling reason to deny him the downward adjustment for acceptance of responsibility that the Government concedes he would otherwise qualify for. The defendant's plea of guilty, his allocution, his apparent candor during the pre-sentence investigation, and his genuine expression of remorse at sentencing demonstrate that he has fully accepted responsibility for his actions. He is thus entitled to a two offense-level downward departure pursuant to Section 3E1.1 of the Sentencing Guidelines.

In sum, the Court, for the foregoing reasons, confirms its sentencing decision of January 28, 1999 in all respects.