**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas Leo PORTER, Defendant–**
**Appellant.**

**No. 98–5846.**

United States Court of Appeals,
Sixth Circuit.

Jan. 28, 2002.

Before KRUPANSKY,
SUHRHEINRICH, and SILER, Circuit
Judges.

SILER, Circuit Judge.

Defendant Thomas Porter appeals his conviction and sentence. He asserts that the district court made errors at sentencing and also erred in admitting an out-of-court photo identification and an audio tape. Finally, he claims his right to a speedy trial was violated. For the reasons discussed below, we **AFFIRM IN PART** and **REVERSE IN PART**.

## I. BACKGROUND

On July 8, 1996, police arrested Sherri Smith at the Cincinnati/Northern Kentucky International Airport for possessing approximately 2.2 kilograms of cocaine.

Smith told detective Mike Bennett that she was en route to the Lexington–Bluegrass airport where a black man would meet her. Bennett arranged for plain clothes police officer Barbara Hayes to monitor the baggage area in Lexington.

When Smith's flight arrived in Lexington, Hayes paged the person meeting Smith and asked him to appear in the baggage area. A black man arrived there shortly after the page. Hayes approached him and asked if he was there to meet Smith; the man said "no" and left. Hayes had the page repeated, and the same man reappeared. He soon left in a van driven by another. He was the only black man Hayes saw in the baggage area during her wait.

In 1997, months after her encounter at the airport, Hayes met Bennett to identify any familiar faces in two photo arrays. Hayes pointed to a man in the first array who was not Porter. Bennett then told Hayes that the second array included the man they believed Hayes had met in the Lexington airport, and the first array included the man suspected of driving the van Hayes saw. Hayes then immediately picked Porter's photo out of the second array and identified him as the black man she had met in the baggage claim area.

Smith cooperated with the government after her arrest. She reestablished contact with Porter and recorded some of their conversations. Porter told Smith that he had been at the Lexington airport on the day she was arrested.

In 1997, Porter was indicted on two counts. Count I charged him with conspiring with Smith and others to possess with intent to distribute approximately 2.2 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II charged him with aiding and abetting Smith and others to possess with intent to

distribute the same amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Porter was convicted on both counts in 1997 and was sentenced to 235 months in prison and five years of supervised release.

## II. DISCUSSION

Porter makes several complaints in his *pro se* brief that could be construed as claims, and this court will treat them as such.

### A. *Apprendi*

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that it is unconstitutional "to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Id.* at 490 (quoting *Jones v. United States*, 526 U.S. 227, 253, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (Stevens, J. concurring)). Here Porter contends that his sentence violated *Apprendi* because the quantity of drugs involved in his offense was determined by the district court based on a preponderance of the evidence rather than by a jury beyond a reasonable doubt, and because the court then relied on this determination to sentence him under the increased penalty range of 21 U.S.C. §§ 841(b)(1)(A) and (B) rather than (C). *Apprendi* had not yet been decided at the time of Porter's trial and sentencing.

■ Based on *United States v. Strayhorn*, 250 F.3d 462, 467 (6th Cir.2001), Porter has preserved his claim here by objecting repeatedly to the district court's

drug quantity determination. Accordingly, this court reviews Porter's *Apprendi* claim *de novo* and finds it to be meritorious.

■ Following *United States v. Ramirez*, 242 F.3d 348 (6th Cir.2001), a defendant found guilty of violating § 841(a)(1) must be sentenced under § 841(b)(1)(C) unless a jury has found beyond a reasonable doubt that he possessed the minimum drug amounts required for sentencing under §§ 841(b)(1)(A) or (B). *See id.* at 351–52. Here, the period of supervised release imposed by the district court—five years—shows that it sentenced Porter under §§ 841(b)(1)(A) and (B). Section 841(b)(1)(A) requires a minimum supervised release period of five years; (b)(1)(B), a minimum of four years; and (b)(1)(C), a minimum of three years. *See* 21 U.S.C. § 841(b)(1). In regard to supervised release, the district court stated that: "This term consists of a term of at least 5 years on Count 1 and a term of at least 4 years on Count 2, all such terms to run concurrently." In this manner, the court made clear that it sentenced Porter according to §§ 841(b)(1)(A) and (B), and therefore believed itself required to sentence him to at least five years of supervised release. Because a jury did not determine drug quantity beyond a reasonable doubt, §§ 841(b)(1)(A) and (B) do not apply, and the court's reliance on the requirements of these provisions was error. We therefore remand this case to the discretion of the district court to redetermine the period of Porter's supervised release in accordance with § 841(b)(1)(C).[1]

### B. *Guideline Adjustments*

Porter argues that the district court erred when it: (1) increased his offense

---

1. The prison term imposed on Porter is consistent with the range set forth in § 841(b)(1)(C); as such, the district court need not reconsider this portion of his sentence. *See* 21 U.S.C. § 841(b)(1)(C) (requir-

ing imprisonment of not more than twenty years). Likewise, the imposition of five years of supervised release is not impermissible, so long as the court does not determine that it is a minimum figure.

level for obstruction of justice pursuant to USSG § 3C1.1; (2) declined to reduce his offense level for acceptance of responsibility under § 3E1.1; and (3) increased his offense level for being an organizer or leader of a criminal activity pursuant to § 3B1.1. This court reviews a district court's application of the Guidelines to determined facts for clear error. *See United States v. Hamilton,* 929 F.2d 1126, 1130 (6th Cir.1991).

### 1. Obstruction of Justice

■ USSG § 3C1.1 cmt. 4 provides a non-exhaustive list of acts that constitute obstruction of justice. The district court found by a preponderance that Porter attempted in a recorded conversation to persuade Smith to blame relevant criminal conduct on a third party. This act meets the definition of obstruction and is sufficient to support the court's imposition of this enhancement.

### 2. Acceptance of Responsibility

■ The district court, without discussion, did not decrease Porter's offense level for acceptance of responsibility under USSG § 3E1.1. Except in "extraordinary cases," conduct meriting an enhancement for obstruction of justice "indicates that the defendant has not accepted responsibility for his criminal conduct." *United States v. Defeo,* 36 F.3d 272, 277 (2d Cir. 1994) (quoting USSG § 3E1.1 cmt 4). Porter points to no extraordinary circumstances here. Nor has he ever admitted to the acts leading to his conviction. Accordingly, the district court's decision not to grant this reduction was not erroneous.

### 3. Organizer/Leader

■ Following *United States v. Haun,* 90 F.3d 1096, 1102 (6th Cir.1996), an increase in offense level under USSG § 3B1.1(a) is appropriate where the court finds that the defendant played a leadership role in the charged criminal activity, and that the activity involved five or more participants. Here the district court found that Porter directed Smith's activities, and that others beyond Porter, Smith, and the driver had participated in Porter's drug dealing enterprise. These findings are sufficient to support a § 3B1.1(a) enhancement for an organizer/leader role.

### C. *Federal Rule of Evidence 404(b)*

■ Porter argues that the district court improperly admitted Smith's testimony about Porter's prior drug deals. Smith testified concerning trips she made for Porter between July 1995 and July 1996 to transport money to Marlon Reynolds, whom she alleged was Porter's drug supplier. Porter relies on Federal Rule of Evidence 404(b), which provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *United States v. Johnson,* 27 F.3d 1186, 1192 (6th Cir.1994), this court wrote that:

> where there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent other acts evidence may be introduced under Rule 404(b).

Here, the government was obliged to prove that Porter had the specific criminal intent to distribute the drugs in question, making "the government's evidence of oth-

er similar acts ... admissible subject to the court's duty to weigh the probative value of the evidence against its prejudicial effect." *Id.* at 1193. Indeed, Smith's testimony was critical in establishing Porter's participation in a conspiracy to distribute cocaine that included the incident in question, and to explain his presence in the Lexington airport. The district court did not abuse its discretion in determining that the probative value of the drug trips evidence outweighed its prejudicial value. *See United States v. Myers,* 123 F.3d 350, 362–63 (6th Cir.1997) (abuse of discretion standard applies to probative value/prejudice balance).

### D. *Photo Identification*

■ Porter argues that the district court erred by admitting the photographic lineup evidence because the arrays and procedures used were unduly suggestive and because the reliability of Hayes' identification was suspect. Nothing about the arrays or the manner in which they were shown to Hayes was unduly suggestive. Each of the arrays contained six photos of black males. In the array containing Porter's photo, all six men had facial hair and closely-cropped haircuts. None of the photos showed height marks or police placards or other suggestive features. Bennett did not suggest that Hayes select a particular photo and provided no physical description of the suspects. Although Bennett told Hayes that the second array included the man suspected of meeting her in the airport, he did not suggest which of the six photos showed that man. Nor does anything in Hayes' response to the photos put the reliability of her identification into question. After focusing on the second array, Hayes immediately and unequivocally identified Porter as the man observed in the baggage claim area. For all these reasons, we find that the photo identification was properly admitted.

### E. *Audiotape Evidence*

Porter next contends that the district court improperly admitted recordings of conversations he had with Smith. Specifically, Porter contends that the use of Smith, a government informant who had already been arrested, to make the recordings violated his constitutional rights and that the recordings were made in violation of the Wire and Electronic Communications Interception and Interception of Oral Communications Act, 18 U.S.C. §§ 2510–2522 (the "Act"). His claims fail as a matter of law.

■ Admission of the recordings did not violate Porter's Sixth Amendment rights. "[T]he Sixth Amendment right to counsel attaches only after judicial proceedings have been initiated against a defendant." *Myers,* 123 F.3d at 358. The conversations were recorded before Porter was indicted, and Porter thus had no relevant Sixth Amendment right at the time they were made.

■ Nor does admission of the recordings violate Porter's Fourth or Fifth Amendment rights. In *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court explained that "the Fourth Amendment [does not protect] a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Id.* at 272 (quoting *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)). Similarly, "the Fifth Amendment has been held not to be implicated by the use of undercover Government agents before charges are filed because of the absence of the potential for compulsion." *Id.* It is undisputed here that Porter's participation in the recorded conversations was voluntary.

█ Finally, Porter's claim that the conversations were recorded in violation of the Act fails. 18 U.S.C. § 2511(2)(c) states: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." Following *Obron Atlantic Corp. v. Barr*, 990 F.2d 861, 864 (6th Cir.1993), "informants who record private conversations at the direction of government investigators are 'acting under color of law.'" In cases, like this one, where the government makes a recording with the consent and cooperation of a government informant who is a participant in the conversation, there is no duty to inform the defendant or to obtain a court order. *See United States v. Barone*, 913 F.2d 46, 49 (2d Cir.1990) (citing § 2511(2)(c)). Furthermore, this court has held repeatedly that promises of leniency or assistance to informants or coconspirators in return for their cooperation in recording conversations do not render their consent involuntary or coerced and thus invalid under § 2511(2)(c). *See United States v. Scaife*, 749 F.2d 338, 345 (6th Cir.1984). Because Smith voluntarily recorded the conversations and did so under color of law, the recordings do not violate the Act and were properly admitted.

### F. *Trial Court Bias*

Porter argues that his conviction should be overturned on the grounds that Judge Bertelsman demonstrated bias during Porter's June 1998 sentencing hearing. The record does not show improper prejudice or bias sufficient to deprive Porter of a fair trial or sentence. Furthermore, the judge's decision to sentence Porter at what he believed to be the minimum of the range mandated by the Sentencing Guidelines suggests strongly that his sentence was not motivated by improper bias. The court therefore rejects this claim.

### G. *Speedy Trial*

Porter claims that his right to a speedy trial was violated. This claim is meritless. 18 U.S.C. § 3161(c)(1) requires that a defendant be brought to trial within 70 days of "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." However, certain types of delay do not count against this period. *See* 18 U.S.C. § 3161(h)(1)-(8). Here 175 days passed between Porter's initial appearance and his trial. However, 57 of these days were excluded from tolling pursuant to § 3161(h)(8)(A) based on a speedy trial waiver, and an additional 138 days were excluded for a variety of other motions filed mostly by Porter. This puts Porter's trial well within the statutory limit. Porter suggests that his speedy trial waiver was invalid, but provides no support for this allegation, and does not otherwise contest the government's calculation of the period.

### III. CONCLUSION

In accordance with the reasoning above, the district court's decision is **AFFIRMED IN PART** and **REVERSED IN PART**, and this case is remanded to the district court for resentencing only.