**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Lawrence AMOS,**
**Defendant–Appellant.**

**No. 92–6116.**

United States Court of Appeals,
Tenth Circuit.

Jan. 14, 1993.

---

William P. Earley, Asst. Federal Public Defender, Oklahoma City, OK, for defendant/appellant.

Arlene Joplin, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., Mark A. Yancey, Asst. U.S. Atty., Oklahoma City, OK, on the brief), for plaintiff/appellee.

Before ANDERSON and EBEL, Circuit Judges, and LUNGSTRUM, District Judge.*

LUNGSTRUM, District Judge.

On July 24, 1991, Defendant Charles L. Amos was charged in a one-count Indictment by a grand jury in the Western District of Oklahoma. The Indictment alleged Defendant possessed a firearm after previously being convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). On August 15, 1991, the government filed notice that it was seeking imposition of sentence under the enhanced penalty provisions of the Armed Career Criminal Act (ACCA), *codified* at 18 U.S.C. § 924(e)(1).

On August 26, 1991, Defendant filed a motion to suppress incriminating statements given to law enforcement officials subsequent to his arrest. After a hearing, the district court denied Defendant's motion to suppress. On January 17, 1992, Defendant entered a conditional plea of guilty to the one-count Indictment, reserving his right to appeal the district court's denial of his motion to suppress. The district court accepted the conditional plea.

Prior to the sentencing hearing, Defendant filed a motion urging the district court to declare invalid the government's notice of eligibility for enhanced penalty provisions under the ACCA. At the sentencing hearing Defendant's objection to the enhanced penalty provision of the ACCA was overruled. Additionally, the district court overruled Defendant's objection to the presentence report denying him a reduction in his offense level for acceptance of responsibility. Defendant was sentenced pursuant to the ACCA to a 235 month term of incarceration to be followed by a three year period of supervised release.

Defendant contends on appeal that the district court erred: (1) in finding Defendant's prior conviction of burglary in the second degree qualified as a "violent" felony under the ACCA; (2) in denying Defendant a reduction for acceptance of responsibility under United States Sentencing Guideline § 3E1.1; and (3) in denying Defendant's motion to suppress evidence. For the reasons set forth below, we affirm the rulings of the district court.

## I. FACTUAL BACKGROUND

On June 14, 1991, Defendant was in the Logan County Jail in Guthrie, Oklahoma, awaiting transfer to the state penitentiary in Lexington, Oklahoma. Defendant had been convicted in Logan County of second degree burglary, kidnapping, and feloniously pointing a firearm. On June 24, 1991, Defendant overpowered the jailer and locked him in a cell. Before escaping, Defendant forced open a locked gun box and stole the jailer's Smith and Wesson .38 caliber revolver and $7,542.00 in cash.

On July 1, 1991, while driving a van with Texas license plates, Defendant was stopped for speeding near Elkhart, Kansas by Kansas Highway Patrol Trooper Gregory Askren. When first questioned by Trooper Askren, Defendant falsely identified himself as Miles L. Jacob. Shortly thereafter, Trooper Askren was joined by

---

* The Honorable John W. Lungstrum, United States District Judge for the District of Kansas, sitting by designation.

Sheriff Loren Youngers, who noticed the van fit the description of a vehicle that had been broadcast as a "gas skip" (i.e. failing to pay for gas) in Kerrick, Oklahoma. The officers then confirmed through dispatch that the vehicle had been stolen several hours earlier in Amarillo, Texas. Defendant was subsequently arrested and read his *Miranda* rights.

Defendant was transported to the Morton County Jail and again advised of his rights from a "Waiver of Rights" form, which was read to Defendant. Defendant started to sign the Waiver of Rights form "CH"; he then paused and signed the name "Miles L. Jacobs." Defendant then agreed to clear everything up if given a cigarette and a cup of coffee. Defendant then signed the Waiver of Rights form with his true name, "Charles L. Amos." He went on to admit that he had escaped from the Logan County Jail, taking with him $7,000 or $8,000 and a snub-nose pistol. Trooper Askren testified that Defendant seemed coherent when responding to his questions, was cooperative, talkative, and at ease, and did not appear to be under the influence of drugs or alcohol. Trooper Askren did notice, however, what appeared to be needle tracks on Defendant's arm.

On July 3, 1991, Special Agent Dennis Laughrey, of the Bureau of Alcohol, Tobacco and Firearms, transported Defendant from the Seward County Jail in Liberal, Kansas, to Wichita, Kansas, for processing before a United States Magistrate on the federal firearms charge. Before embarking on their trip, Agent Laughrey advised Defendant it was a long trip and he did not have to talk and again advised Defendant of his right to remain silent and his right to an attorney. During the trip, Defendant gave further details describing his escape and how he had taken the gun and the money.

On August 14, 1991, Defendant was arraigned in the United States District Court for the Western District of Oklahoma. Defendant was remanded to the custody of the United States Marshals, who placed Defendant in the Oklahoma County Jail pending trial. On November 28, 1991,

while awaiting trial on the federal firearms violation, Defendant was charged in the Oklahoma County District Court for injuring a public building. It was alleged that Defendant used a piece of metal from a desk to break several glass blocks in the outer wall of the Oklahoma City Jail. On February 16, 1992, while awaiting sentencing on the federal firearms charge, Defendant allegedly attempted escape from the Oklahoma County Jail by breaking exterior windows and using torn bedsheets as a rope. As a result, Defendant was charged in the Oklahoma County District Court with escape and injuring a public building. Based on this conduct, the probation officer applied the two level upward adjustment for obstruction of justice and denied the two level downward adjustment for acceptance of responsibility.

## II. DEFENDANT'S PRIOR BURGLARY CONVICTION

■ Defendant asserts that the trial court erred by using a prior conviction for second degree burglary to enhance his sentence under 18 U.S.C. § 924(e)(1). We will review *de novo* the trial court's interpretation and application of the ACCA. *United States v. Tisdale,* 921 F.2d 1095, 1098 (10th Cir.1990). A person who violates 18 U.S.C. § 922(g)(1) may be subject to an enhanced penalty with proof of three prior convictions for any violent felony or serious drug offense committed on occasions different from one another. 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as:

... any crime punishable by imprisonment for a term exceeding one year, ... that—

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another ...

18 U.S.C. § 924(e)(2)(B).

The government's notice seeking sentencing pursuant to the ACCA listed Defendant's three previous "violent felony" convictions as that term is defined in 18 U.S.C. § 924(e)(2). One of the "violent felony" convictions was Defendant's June 9,

1980 second degree burglary conviction in Ottawa County, Oklahoma. Defendant was convicted of burglarizing a building owned by Miami Auto Sales in violation of Okla.Stat. tit. 21, § 1435.[1] Defendant argues that this second degree burglary conviction did not involve "serious potential risk of physical injury to another" and therefore does not qualify as a "violent felony" under 18 U.S.C. § 924(e).

The Supreme Court addressed and specifically rejected the argument made by Defendant in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Taylor*, the Supreme Court rejected the argument that Congress meant to include as predicate offenses only a subclass of burglaries whose elements include conduct that presents a serious risk of physical injury to another. *Id.* at 598, 110 S.Ct. at 2158. In reviewing the legislative history, the Supreme Court concluded that Congress intended burglaries be included in the enhancement statutes even if they do not necessarily involve the use or threat of force against a person. *Id.* at 597, 110 S.Ct. at 2157. This is due to the fact that burglary so often presents a risk of injury to persons, or is so often committed by career criminals, that it should be included in the enhancement statutes even though, considered solely in terms of its statutory elements, it does not necessarily involve the use or threat of force against a person. *Id.* The Supreme Court furthered reasoned that:

> [I]f Congress had meant to include only an especially dangerous subclass of burglaries as predicate offenses, it is unlikely that it would have used the unqualified language "is burglary ... or other-

wise involves conduct that presents a serious potential risk" in § 924(e)(2)(B)(ii).
*Id.*

In *Taylor*, the Supreme Court also recognized the problems created by variances in state law burglary statutes by creating a national definition of burglary for purposes of 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court stated:

> We conclude that a person has been convicted of burglary for purposes of § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Id.* at 599, 110 S.Ct. at 2158.[2]

Defendant's conviction for burglarizing the structure owned by Miami Auto Sales meets the *Taylor* court's definition of burglary and qualifies as a "violent felony" under § 924(e)(2)(B).[3] Therefore, we affirm the district court's classification of Defendant's second degree burglary charge as a "violent felony" as defined in 18 U.S.C. § 924(e)(2)(B), and conclude Defendant was properly sentenced pursuant to the ACCA.

## III. THE DISTRICT COURT'S DENIAL OF A TWO–LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY

 We review the "acceptance of responsibility" determination as a question of fact under the clearly erroneous standard. 18 U.S.C. § 3742(e); *United States v. Spedalieri*, 910 F.2d 707, 712 (10th Cir.1990). As such, the trial court's determination of

---

1. Okla.Stat. tit. 21, § 1435 provides:

 Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

2. *See also United States v. Permenter*, 969 F.2d 911, 912 (10th Cir.1992); *F.D.I.C. v. Canfield*, 967 F.2d 443, 447 (10th Cir.1992).

3. Defendant testified at the sentencing hearing that he and a friend had gone to a car lot, broken down the back door of a "shack" located in the middle of the car lot, and stolen a set of keys off a pegboard. Defendant's testimony at the sentencing hearing negates any argument that defendant merely broke into a vehicle or vending machine, which would be a burglary under Okla.Stat. tit. 21, § 1435 but would not satisfy the *Taylor* definition.

whether a defendant has accepted responsibility is subject to great deference on review and should not be disturbed unless it is without foundation. *Id.* However, while we must give due deference to the district court's application of the guidelines to the facts, we review the application of the guidelines fully for errors of law. *United States v. Smith,* 900 F.2d 1442, 1445 (10th Cir.1990). Pure questions of interpretation of the sentencing guidelines, which are closely analogous to questions of statutory interpretation, are questions of law. *United States v. Irvin,* 906 F.2d 1424, 1426 (10th Cir.1990). We review questions of law *de novo. Id.*

In the initial presentence report prepared February 5, 1992, Defendant was credited with the two-level reduction for acceptance of responsibility. However, on February 16, 1992, while awaiting sentencing on the firearms charge, Defendant allegedly attempted escape from the Oklahoma County Jail.[4] As a result of Defendant's attempted escape, he was charged in the Oklahoma county district court with escape and injuring a public building. Based on this conduct, in the revised presentence report dated March 6, 1992, the probation officer applied the two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1 and denied the two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

Defendant contends that his admissions of guilt to the arresting officer, the transporting officer, the court and probation officer warranted the two-level reduction for acceptance of responsibility. Defendant further contends that the district court's reliance on the obstruction of justice determination in denying the reduction for acceptance of responsibility was error because: (1) the obstruction of justice adjustment could not be based on the false statements he made to arresting officers in Kansas because his conduct did not result in a significant hindrance to the investigation or prosecution of the instant offense; and (2) the obstruction adjustment should not have applied because his escape attempt was new, unrelated criminal activity and not a proper basis for enhancement of the federal offense.

■ The court finds no merit to Defendant's second contention. U.S.S.G. § 3C1.1, Application Note 3(e) provides that escaping or attempting to escape from custody before trial or sentencing is an example of conduct to which the obstruction enhancement applies. Defendant's attempted escape occurred as he was awaiting sentencing on the firearms charge. It is not necessary, as Defendant asserts, that a relationship exist between the guidelines offense and the obstructive conduct. As stated in the guidelines, escape or attempting escape from custody before trial or sentencing is an example of conduct that warrants the adjustment. Nothing more is required. Therefore, the court finds that the obstruction enhancement was properly applied by the district court.[5]

Recognition of the obstruction enhancement did not directly affect the computation of Defendant's offense level.[6] Howev-

---

**4.** According to the revised presentence report, Defendant made a cloth rope from torn bedsheets, tore a metal stool loose from a desk, and used the stool to knock out exterior windows of the jail during the course of his attempted escape. Investigators found written plans of escape in Defendant's room, and Defendant gave investigators a statement admitting his attempt to escape.

**5.** The court finds no merit to Defendant's argument that in administering the obstruction enhancement and denying the acceptance of responsibility reduction, the district court "sentenced Mr. Amos to an additional period of incarceration based on untried criminal conduct." This assertion by Defendant stems from the fact Defendant gave no testimony regarding the attempted escape at the sentencing hearing. The court finds the obstruction adjustment was properly assessed based on unconvicted conduct of Defendant established by a preponderance of the evidence at sentencing. Fed.R.Crim.Pro. 32(c)(3)(A) provides that a defendant must challenge the presentence report if he or she alleges a factual inaccuracy. Facts that are uncontested at sentencing may be relied upon by the court and do not require production of evidence. *United States v. O'Dell,* 965 F.2d 937, 938 (10th Cir.1992).

**6.** This is due to the fact that Defendant was sentenced under the ACCA. The calculation of a sentence for an Armed Career Criminal under U.S.S.G. § 4B1.4 requires the court to first cal-

er, because the obstruction enhancement and acceptance of responsibility reduction are intertwined, recognition of the obstruction enhancement does provide grounds for the denial of Defendant's acceptance of responsibility reduction. Application Note 4 of Guideline § 3E1.1, Acceptance of Responsibility, provides:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

Because this court has determined that the obstruction of justice enhancement was properly applied in this case, it follows that Defendant was properly denied the two-level reduction for acceptance of responsibility. We do not find that the facts of this case constitute an "extraordinary case," as contemplated by Application Note 4 to Guideline § 3E1.1, that would warrant an adjustment under both § 3C1.1 and § 3E1.1.

■ In addition to our finding that the obstruction enhancement was properly applied, we find there is a separate ground sufficient to affirm the district court's denial of the acceptance of responsibility reduction. This separate ground is Defendant's failure to carry his burden in establishing his entitlement to the reduction.

■ A defendant who enters a guilty plea is not entitled to a sentencing reduction as a matter of right. The burden of proof for establishing entitlement to a reduction of the offense level for acceptance of responsibility is on the defendant. *United States v. Rogers*, 921 F.2d 975, 982 (10th Cir.1990). The defendant must establish the mitigating factor by a preponderance of the evidence. *Id.*

■ The sentencing court's determination that a defendant is not entitled to an adjustment for acceptance of responsibility is entitled to great deference on review and should not be disturbed unless it is without foundation. U.S.S.G. § 3E1.1, Application Note 5, *United States v. Whitehead*, 912 F.2d 448, 451 (10th Cir.1990). In determining whether a defendant has "accepted responsibility," the sentencing court can consider if there has been a "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1, Application Note 1(b). We find that there was sufficient evidence before the sentencing court regarding Defendant's attempted escape from the Oklahoma County Jail to find that Defendant had not withdrawn from criminal conduct, thus warranting denial of the reduction for acceptance of responsibility.

## IV. THE DISTRICT COURT'S DENIAL OF DEFENDANT'S MOTION TO SUPPRESS

■ In reviewing the denial of Defendant's motion to suppress evidence, the trial court's findings of fact are accepted unless clearly erroneous, and the evidence is considered in the light most favorable to the government. *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir.1990).

Defendant contends his statement to Kansas Highway Patrol Trooper Gregory Askren, and his subsequent statement to Special Agent Dennis Laughrey, Bureau of Alcohol, Tobacco and Firearms, were obtained in contravention of the Fifth and Sixth Amendments to the United States Constitution. In denying the motion to suppress evidence, the district court found Defendant knowingly, intelligently and voluntarily waived his rights prior to confessing to law enforcement officials and that

culate the offense level applicable from Chapters 2 and 3. This offense level is then compared to the offense level provided by § 4B1.4, with the greater of the two offense levels becoming the defendant's base offense level. Defendant's offense level calculated from Chapters 2 and 3 (including the two level obstruction enhancement) was 16. Because this was less than

the offense level of 33 provided for by § 4B1.4(b)(3)(B), the trial court correctly established Defendant's offense level at 33. The only adjustment to an offense level provided for under § 4B1.4(b)(3)(B) is the two-level downward reduction for acceptance of responsibility. Thus the obstruction adjustment did not operate to increase Defendant's final guideline sentence.

there was no misconduct or coercion by Special Agent Laughrey.

The standard for voluntariness of a waiver is the same as the standard for voluntariness of a confession. *Colorado v. Connelly,* 479 U.S. 157, 169–170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). The government must prove by a preponderance of the evidence that a defendant's waiver and confession were voluntary. *Id.* at 168, 107 S.Ct. at 522. In assessing the validity of a waiver, courts analyze the totality of the circumstances surrounding the interrogation. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986). An express waiver is usually strong proof of the validity of that waiver. *United States v. Hack,* 782 F.2d 862, 866 (10th Cir.1986), *quoting North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

It is clear from the record that the district court considered the executed "Waiver of Rights" form and the totality of the circumstances surrounding the interrogation by Trooper Askren when it determined the government had met its burden of proving the voluntariness of Defendant's waiver. We have reviewed the factual record of this case and found nothing in the record to suggest Defendant was mistreated or coerced. We also find sufficient support for the district court's finding that Defendant had the capacity to understand his rights, which he could have exercised at any time during the interrogation had he chosen to do so.[7] We find, under the totality of the circumstances surrounding the statements made by Defendant, that the record fully supports the district court's findings that Defendant's waiver was voluntarily, knowingly, and intelligently given. The district court's decision to admit evidence of the confession was proper.

Defendant also argues that Agent Laughrey failed to obtain a written "Waiver of Rights" before their conversation on the trip to Wichita during which Defendant made several incriminating statements and that Agent Laughrey may have engaged in misconduct by attempting to prompt Defendant into making incriminating statements. The district court found that Agent Laughrey reiterated Defendant's rights to him before any conversation took place, that Defendant made a knowing waiver of his rights when conversing with Agent Laughrey, and that Agent Laughrey had not engaged in any threats, coercion, duress or promises and thus was not guilty of any misconduct. The district court also accepted Agent Laughrey's testimony that Defendant initiated the conversation. We have thoroughly reviewed the factual record of this case and we find none of the district court's factual conclusions to be clearly erroneous. We therefore find the district court's decision to admit evidence of Defendant's admissions to Agent Laughrey was proper.

## V. CONCLUSION

For the reasons stated above, the holding of the district court is AFFIRMED.

---

7. Defendant alleges that his cocaine use prior to the arrest so affected his mental abilities that any waiver given by Defendant was not knowingly and voluntarily made. We have examined the record and find sufficient evidence to support the district court's conclusion that Defendant made a knowing, voluntary waiver of his rights.