**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 26 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 00-4014

LEONORA LUPE ARCHULETTA,

Defendant-Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 97-CR-17-C)**

_____

Steven B. Killpack, Federal Defender, Salt Lake City, Utah (Kevin L. Sundwall, Assistant Federal Defender with him on the brief) for Defendant-Appellant.

Michele Christiansen, Assistant United States Attorney, Salt Lake City, Utah (Paul M. Warner, United States Attorney, and Richard N.W. Lambert, Assistant United States Attorney, on the brief) for Plaintiff-Appellee.

_____

**TACHA**, Circuit Judge, **PORFILIO**, Circuit Judge, and **KANE**, Senior District Judge[*].

_____

**KANE**, Senior District Judge.

_____

Leonora Lupe Archuletta appeals her sentence on a single count of bank fraud in violation of 18 U.S.C. § 1344.  Archuletta claims the district court erred both in imposing a two-level enhancement under U.S.S.G. § 2F1(b)(2)(A) for more than minimal planning and in refusing to grant a reduction in offense level for "acceptance of responsibility" under U.S.S.G. § 3E1.1.  We exercise jurisdiction under 18 U.S.C. § 3742(a), 28 U.S.C. § 1291 and Fed. R. App. P. 4(b), and AFFIRM in part and REVERSE in part.

## I.  INTRODUCTION AND STANDARD OF REVIEW.

On February 15, 1996, Leonora Lupe Archuletta, together with Sandra Kaye Lemieux, entered Granite Credit Union in Salt Lake City and used the identification card of her deceased sister to open a checking account in the sister's name.  Archuletta returned the following day to pick up starter checks for the account.  In February 1997, Archuletta pleaded guilty to an indictment stating that she "did knowingly execute and attempt to execute an artifice and scheme to defraud a financial institution . . . by fraudulently and without authorization opening a checking account in the name of Mary Margaret Garcia and thereafter cashing checks and otherwise obtaining money through the use of the fraudulently opened account."  (R. Vol. I, Doc. 6.)  The total loss suffered by the affected financial institution was $1,395.  Archuletta received $400 of the fraudulently obtained funds.  _See_ Sentencing Report, ¶ 10 (R. Vol. II).

---

[*]    Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

According to the government, Archuletta's sentencing at the high end of the 15-21 month guideline range was based on her having absconded after entering her plea and failing, generally, to comply with the conditions for her release to pretrial supervision. Specifically, Archuletta failed in March 1997 to keep a scheduled appointment with pretrial services, to submit as instructed to required urinalysis and did not reside at the address provided to the court. A warrant for Archuletta's arrest was issued on March 21, 1997, but nothing was heard from her again until December 28, 1999, when a warrant was executed against her at the Salt Lake County Jail, where she was being detained on unrelated charges.

At sentencing on January 25, 2000, Archuletta was determined to have an offense level of ten and a criminal history category of four, resulting in the 15-21 month guideline range. In concluding that an application of the two-point "more than minimal planning" enhancement was warranted, the sentencing court found there "was nothing spontaneous" about Archuletta's crime, which involved "the deliberate opening of an account, [a] fraudulent account; going into the financial institution; using, if I recall, a false name . . . . and holding the account itself with false identification, false name." Tr. of Sentencing (R. Vol. I, Doc. 34) at 4-5. In addition, and because Archuletta fled in March 1997 while awaiting sentencing, the court adjusted her base offense by another two levels for obstruction of justice and declined to impose an "acceptance of responsibility" reduction, noting Archuletta had not only fled, but had engaged in further criminal activity after she fled. Archuletta appeals only the enhancement for more than minimal planning and the refusal to reduce her offense level for acceptance of responsibility.

Archuletta does not challenge the district court's factual findings, *per se*, but rather the court's application of those facts to the law as defined in the Sentencing Guidelines.

Specifically, Archuletta challenges the increase of her offense level for "more than minimal planning" on the basis of findings that constituted no more than the necessary elements of a violation of 18 U.S.C. § 1344, and challenges the district court's refusal to temper the obstruction enhancement with a reduction for "acceptance of responsibility," given the "extraordinary" circumstance that Archuletta thought, at the time she fled after her guilty plea, that she had AIDS and was "doomed by a medical death sentence."

"We review the district court's interpretation and application of the sentencing guidelines de novo. We review the court's underlying findings of fact for clear error. We will accept these factual findings unless the record does not support them or, after reviewing the record, 'we are left with the definite and firm conviction that a mistake has been made.'" *United States v. Pappert*, 112 F.3d 1073, 1078 (10th Cir. 1997)(quoting *United States v. Easterling*, 921 F.2d 1073, 1077 (10th Cir. 1990)). *Applied in United States v. Hill*, 197 F.3d 436, 446 (10th Cir. 1999).

## II. DISCUSSION.

### A. Two-Level Enhancement for "More than Minimal Planning."

Section § 2F1.1(b)(2) provides for a two-level enhancement "[i]f the offense involved . . . more than minimal planning." "More than minimal planning," in turn, is defined in the relevant Application Notes as "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 1B1.1, Application Note 1(f). "More than minimal planning" is also said to exist if "significant affirmative steps were taken to conceal the offense," *id.*, and will be "deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." *Id. Applied in United States v. Copus*, 110 F.3d 1529, 1537 (10th Cir. 1997).

4

The enhancement in Archuletta's case was premised on the first of the three rationales. (Tr. of Sentencing at pp. 4-5.)[2] The question before us then is whether, under a clearly erroneous standard, the planning and conduct in which the district court found Archuletta to have engaged constituted "more planning than is typical for the commission of the offense [of bank fraud] in its simple form" as a matter of law. We conclude it does not.

Bank fraud is committed by one who

knowingly executes, or attempts to execute, a scheme or artifice –

> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds . . . or other property . . . under the custody or control of a financial institution, by means of false or fraudulent pretenses.

18 U.S.C. § 1344. Here, the district court found the "deliberate opening," by Archuletta, of a "fraudulent account." The court found Archuletta "[went] into the financial institution using . . . a false name . . . and [held] the account . . . with . . . [that] false name ." (Tr. Sentencing at p. 5:1-3.) "[A]lthough Ms. Archuletta's part may have been quite isolated and discrete," the court concluded, "it seems to me that it showed a great deal of planning."[3] Try as we might, we

---

[2] The district court acknowledged, and it is undisputed, that this case involved a single act of fraud such that the "repeated acts . . . unless . . . opportune" rationale would not apply. (Tr. Sentencing at p. 5:13-15.) It appears, however, the district court confused these standards somewhat, conceding, on the one hand, that "we really don't have [repeated acts] here," but finding, on the other hand, that there was "nothing opportune" about Archuletta's conduct such that the enhancement would apply. (Tr. of Sentencing at p. 5:13-16.) The government also urges us in its brief to consider the second rationale, citing *United States v. Moser*, 168 F.3d 1130, 1131 (8th Cir. 1999) to support a contention that the opening of an account using a false identity card and check made out in that false name constitute "steps to conceal" the offense sufficient to establish more than minimal planning. (Br. of United States, at p. 9.) We do not consider this rationale because it was neither applied nor considered by the district court below.

[3] The entirety of the court's comments are quoted below:

cannot discern how this conduct constituted more than the minimal planning necessary to commit a violation of 18 U.S.C. § 1344 in its simplest form.

Fraud is a specific intent crime. Bank fraud under 18 U.S.C. § 1344 requires, as a minimum and necessary element for conviction, that the fraud be achieved through "a scheme or artifice" "executed" by the defendant. How, we wonder, could Archuletta have "execute[d] . . . a scheme or artifice . . . to defraud" with anything less than some level of "deliberation" or consciousness greater than "spontaneity?" And how, if the elements of the crime include the obtaining of funds "by means of false or fraudulent pretenses," can the use by Archuletta of her sister's identification constitute anything more than the minimal planning necessary to "execute" a scheme or artifice to obtain those funds by such means?

The government urges us to focus on the use of Archuletta's dead sister's identification card, suggesting "the facts adduced" in that regard give rise to a "reasonable inference" that

> [I]t seems to me that more than minimal planning does apply here. There was nothing spontaneous about that. We have the deliberate opening of an account, fraudulent account; going into the financial institution; using, if I recall, a false name. That certainly shows that – wasn't there identification of Ms. Archuletta's sister that was used in the offense?
>
>       \*   \*   \*
>
> All those – and holding the account itself with false identification, false name, shows me that what you have would fall within the more than minimal planning.
>
>       \*   \*   \*
>
> And although it says more than repeated acts, which we really don't have here, there's nothing opportune about this. What I see was a very deliberate plan. And although Ms. Archuletta's part may have been quite isolated and discrete, it seems to me that it showed a great deal of planning. And so I am going to find that the two point enhancement is appropriate.

(Tr. of Sentencing at pp. 4-5.)

6

Archuletta engaged in more than minimal planning in conceiving of and executing the plan to use Garcia's ID. Our review of the record, however, reveals these "adduced facts" to be elusive. Other than the established conduct of Archuletta, which we have already determined does nothing more than meet the basic elements of a § 1344 violation, there is no testimony or other evidence in the record that supports an inference that Archuletta, rather than Lemieux or someone else, conceived of the plan to use Garcia's identification card. Archuletta specifically denies it was her idea to open the account in her sister's name and states it was "Sandra Kaye Lemieux's planning that she followed in every respect because she didn't know how the scheme worked without Sandra outlining what she should do in detail." Def.'s Statement Regarding Sentencing Factors (R. Vol. I, Doc. 24) at p. 1.[4] There is nothing in the record that refutes or contradicts this statement. Not even the identification card or the check used to open is included in the record.

In our view, the district court's findings regarding Archuletta's conduct reflect nothing more than the planning necessary to the commission of bank fraud in its simplest form. Bank fraud is "fraud": An element of "deliberation," as distinguished from "spontaneity," and the use of a false name or false identification to defraud, are each endemic to the specific offense. Further, and because Archuletta could not have violated § 1344 unless she actually obtained funds from the credit union through fraud, the fact Archuletta returned for the starter checks the following day is also evidence of nothing more than the minimum conduct required to establish a violation of § 1344 in its simplest form.

_____

[4] According to the government's Presentence Report (R. Vol II, submitted under SEAL), Lemieux was sentenced to 30 days in prison and a three year term of probation for her role in the fraud. She successfully completed probation on October 31, 1999.

And finally, we iterate this Court's position that the enhancement for more than minimal planning is "designed to target criminals who engage in complicated criminal activity because their actions are considered more blameworthy and deserving of greater punishment than a perpetrator of a simple version of the crime." *United States v. Rice*, 52 F.3d 843, 851 (10th Cir. 1995)(more than minimal planning enhancement appropriate where defendant was an accountant who used his special skills to perpetrate a "complicated scheme of tax fraud" involving several Subchapter S corporations and multiple counts of income tax evasion). As we read the Sentencing Report and the record generally in this case, it appears Archuletta was a drug addict whose largely inept and small scale criminal activity is consistent with her needs as a drug addict. (R. Vol. II, Criminal History and Offender Characteristics.) The $400 bank fraud "scheme" to which she pleaded guilty was far from complicated and was easily detected. In short, we do not view Archuletta as the type of criminal toward whom the § 2F1.1 more than minimal planning enhancement is targeted.

We conclude the facts in the record and the facts found by the district court at sentencing do not support a two-level "more than minimal planning" adjustment of Archuletta's offense.

B. Refusal to Reduce Sentence for "Acceptance of Responsibility."

Notwithstanding a recommendation in the Sentencing Report that Archuletta be considered for a two-level reduction for "acceptance of responsibility" under U.S.S.G. § 3E1.1, the district court refused to apply such a reduction because Archuletta had "obstructed justice" by fleeing before her original sentencing hearing. Archuletta concedes the validity of the "obstruction of justice" enhancement, imposed in accordance with U.S.S.G. § 3C1.1, but challenges the court's refusal to reduce her sentence for "acceptance of responsibility" in

8

accordance with the commentary to § 3E1.1, note 4.

Note 4 of the commentary to § 3E1.1 provides that an obstruction of justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." In certain "extraordinary cases," however, "adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, Note 4 (applied in *United States v. Hawley*, 93 F.3d 682, 689 (10th Cir. 1996)). Archuletta contends hers is such an "extraordinary" case because the court's refusal to reduce her sentence was based not on her refusal to acknowledge guilt (the Presentence Report explicitly stated Archuletta accepted "full responsibility" for her actions (R. Vol. II at ¶ 12) and the government at sentencing took no contrary position), but on her conduct in fleeing her sentencing hearing and thereby obstructing justice. Because she believed, at the time, that she was dying of AIDS and fled for that reason rather than to conceal her crime or avoid accepting responsibility for it, Archuletta contends it was error for the sentencing court to refuse to apply the two-level § 3E1.1 reduction.

The district court explicitly rejected Archuletta's request for a Note 4 exception at sentencing. (Tr. of Sentencing, at pp. 15-16.) The court found Archuletta "has not shown recognition for her criminal conduct" (Tr. at 15:24-25) and "continues in criminal activity." (Tr. at 16:2-3.) "This is not," the district court concluded, "one of those exceptional cases that would warrant the reduction [under § 3E1.1]." (*Id.* at 16:3-4.) While expressing concern over the departure from the Presentence Report in this regard, we cannot, on the basis of Archuletta's "medical death sentence" rationale, conclude that the district court's findings are clearly erroneous. We therefore decline to disturb them on appeal.

Based on the foregoing, IT IS ORDERED that the district court's imposition of a two-

level enhancement for more than minimal planning under U.S.S.G. § 2F1.1(b)(2) is REVERSED. The court's rejection of a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 is AFFIRMED. The matter is REMANDED to the district court for resentencing using an offense level of eight and a guideline range of four. The mandate shall issue forthwith. Given the time already served during the pendency of this appeal and the fact that Archuletta may be approaching her release date under her reconfigured sentence, the district court is expected to effect the mandate of this court as expeditiously and effectively as possible.