**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 19 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 00-2286

RODNEY WAYNE SWANSON,

Defendant-Appellant.

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-99-525-LH)

---

Submitted on the Briefs:

Benjamin A. Gonzales, Assistant Federal Public Defender, and Scott M. Davidson, Research and Writing Specialist, Albuquerque, New Mexico, for Defendant-Appellant.

Norman C. Bay, United States Attorney, and Laura Fashing, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **ANDERSON** and **KELLY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Rodney Wayne Swanson pled guilty to conspiracy to manufacture methamphetamine. He appeals from the district court's enhancement of his sentence for obstruction of justice and its refusal to grant him a downward adjustment for acceptance of responsibility. We affirm.

## I.

Mr. Swanson was arrested in New Mexico in April 1999 for conspiracy to manufacture methamphetamine. He pled guilty in September and agreed to cooperate with the government thereafter. Because his sentencing was not scheduled until December, the district court granted his motion to be released to a halfway house pending the sentencing date. Two days into his residence, Mr. Swanson signed out for work and never returned. He remained at large past the December sentencing date and eventually was apprehended by Missouri police in an apartment containing drug manufacturing equipment. Mr. Swanson signed a statement claiming responsibility for the manufacturing paraphernalia, although he now contends he made that statement only to protect his girlfriend from criminal charges.

After Mr. Swanson returned to New Mexico, the district court sentenced him to ninety-seven months in prison. In calculating that sentence, the court

added a two-level enhancement for obstruction of justice on the basis of his flight and denied any sentence reduction for acceptance of responsibility. Mr. Swanson challenges these two determinations on appeal. He admits he absconded from the halfway house, but he argues his flight was motivated not by any intent to obstruct justice but by a need to protect loved ones from danger. He further contends residence in a halfway house is not "custody" for purpose of the sentencing guidelines, and he argues an adjustment for acceptance of responsibility was warranted.

## II.

## OBSTRUCTION OF JUSTICE

### A. Motivation to Flee

Section 3C1.1 of the sentencing guidelines provides a two-level enhancement for obstruction of justice if a defendant is found to have "willfully obstructed or impeded . . . the administration of justice," during trial or sentencing. Mr. Swanson argues his flight was not a willful obstruction of justice because he did not intend to interfere with sentencing. In his objections to the pre-sentence report, he alleged that other prison inmates had threatened his own life and that of his girlfriend and her children in retaliation for aid he had

allegedly given police after his arrest. He explained that he left New Mexico in order to remove his girlfriend and her children from danger and that he planned to turn himself in once they were safe.

The district court considered these explanations but determined that Mr. Swanson's flight, his failure to communicate with his attorney, and the need for an arrest to secure his appearance in court led to the conclusion that he did not intend to return to New Mexico and serve his sentence. The court held this conduct constituted obstruction of justice. We review the district court's findings of fact for clear error and its interpretation and application of the sentencing guidelines de novo. *United States v. Archuletta*, 231 F.3d 682, 684 (10th Cir. 2000).

Mr. Swanson first contends the purpose of the obstruction of justice enhancement is to promote judicial "truth seeking," a function he says was unaffected by his actions in this case. In support of this argument he refers to a list of examples of obstruction of justice given in Note 4 of section 3C1.1. He notes those examples include perjury, witness tampering, and procuring false documents – all acts that interfere with judicial truth seeking. His reading of Note 4 is strangely selective, however, because the same list of examples includes "escaping or attempting to escape from custody before trial or sentencing," as well as "willfully failing to appear, as ordered, for a judicial proceeding." Even

accepting, arguendo, Mr. Swanson's contention that the only focus of the obstruction inquiry is "truth finding," it is clear that a court's attempt to conduct truth-finding proceedings is impeded when one party cannot be found.

Mr. Swanson's next argument is, in essence, that his flight was justified by his concern for the safety of his girlfriend and her children. He points out the district court made no specific findings with regard to the explanations set out in his objections to the pre-sentence report. While the court considered Mr. Swanson's flight and determined that he did not intend to return to custody, it is not clear to what extent the court considered and rejected his proffered explanation. Mr. Swanson's motivations are beside the point, however—the only significant question is whether he willfully fled custody. *See United States v. Amos*, 984 F.2d 1067, 1072 (10th Cir. 1993) ("[E]scape or attempting escape from custody before trial or sentencing is an example of conduct that warrants the adjustment. Nothing more is required."); *see also Archuletta*, 231 F.3d at 686 (applying enhancement to defendant who fled because believed she was dying); *United States v. Aponte*, 31 F.3d 86, 88 (2nd Cir. 1994) ("It is sufficient . . . that the defendant intended to fail to appear at a judicial proceeding, *regardless of his reason* for desiring to flee.") (emphasis added). Even if Mr. Swanson truly feared for his girlfriend's safety, there were legitimate options for her protection by law enforcement, friends, or family. Instead of calling upon those options, Mr.

Swanson chose to escape custody. He must now accept the consequences of that choice.

## B.  Definition of "Custody"

As discussed above, the district court increased Mr. Swanson's sentence under the obstruction of justice enhancement, which applies to "escaping or attempting to escape from custody before trial or sentencing."  U.S.S.G. § 3C1.1, Note 4(e).  Mr. Swanson attempts to avoid application of the guideline by arguing residence in a halfway house does not constitute "custody."[1]  To support this argument, he cites *United States v. Baxley*, 982 F.2d 1265, 1270 (9th Cir. 1992), which held that a defendant who fled from a treatment center was not guilty of felony escape from custody because the treatment center was not "custody" for purposes of the relevant statute.

As explained in *Baxley*, however, "the term 'custody' may vary in meaning when used in different contexts." *Id.* at 1269 (citation omitted).  Calculations under the sentencing guidelines regularly consider conduct not charged as a

---

[1] Note 4 also alludes to "willfully failing to appear, as ordered, for a judicial proceeding."  Thus, even without an escape from custody, Mr. Swanson's failure to appear for his December sentencing date may independently support the enhancement.  In view of our holding that a halfway house constitutes "custody" for purposes of the obstruction enhancement, we need not consider this alternate ground.

crime, so the definition of "custody" under a guidelines analysis may be broader than the definition of "custody" needed to support the substantive charge of felony escape. Life at a halfway house undoubtedly entails fewer restrictions than life in prison, but one who lives there under court order is not free to come and go at will. In that respect, residence at a halfway house is a form of "custody." *See, e.g.*, *United States v. Banta*, 127 F.3d 982, 983 (10th Cir. 1997) (defendant sentenced to "imprisonment in a halfway house"); *United States v. Elliott*, 971 F.2d 620, 621 (10th Cir. 1992) (court ordered "incarceration" in halfway house).

Implicitly recognizing that "custody" under the guidelines is broader than under the context considered in *Baxley*, the Ninth Circuit has held that "[a]bsconding from pretrial release merits an upward adjustment" for obstruction of justice. *United States v. Draper*, 996 F.2d 982, 986 (9th Cir. 1993). Mr. Swanson attempts to characterize a halfway house as analogous to parole or release on bail rather than to incarceration, but other circuits have held that failure to report by one released on bond is "comparable to an escape from custody" as well. *United States v. Defeo*, 36 F.3d 272, 276 (2d Cir. 1994); *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (applying enhancement to defendant who jumped bond). We agree with our sister circuits and hold that escape from a halfway house is "escape from custody" for purposes of section 3C1.1.

# III.

# ACCEPTANCE OF RESPONSIBILITY

Section 3E1.1(a) of the guidelines allows for a two-level sentencing decrease if a defendant "clearly demonstrates acceptance of responsibility for his offense." An additional one-level decrease may be available if the defendant provides information to the government or makes a timely guilty plea. *See* U.S.S.G. § 3E1.1(b). One important consideration in determining whether to grant the adjustment is whether the defendant shows "voluntary termination or withdrawal from criminal conduct or associations." *Id*., Note 1(b). Mr. Swanson's original pre-sentence report included a recommendation for a three-level reduction because of his guilty plea and other aid to the government. App., vol. III at ¶ 19. This recommendation was rescinded after his flight because at the time of his arrest in Missouri he "acknowledged ownership of all [methamphetamine paraphernalia] in his residence and further stated he was attempting to manufacture methamphetamine." *Id*.

The district court adopted the recommendations of the amended pre-sentence report, denying an adjustment for acceptance of responsibility. In reviewing this determination, we again consider application of the guidelines de novo and underlying factual findings for clear error. *Archuletta*, 231 F.3d at 684.

Because findings of fact play a central role, "the trial court's determination of whether a defendant has accepted responsibility is subject to great deference on review and should not be disturbed unless it is without foundation." *United States v. Amos*, 984 F.2d 1067, 1071-72 (10th Cir. 1993).

Mr. Swanson contends the district court should have considered evidence that he was not involved in drug manufacturing in Missouri and that he had declared himself responsible for the manufacturing paraphernalia solely to protect his girlfriend from criminal charges. The only evidence before the court, however, was an unsworn letter from Mr. Swanson's girlfriend to his attorney. Mr. Swanson turned down the court's offer of an evidentiary hearing on the issue. The guidelines require only criminal *associations*, not actual criminal activity, and regardless of his actual responsibility for the paraphernalia, Mr. Swanson was living in an apartment where methamphetamine manufacturing took place. Accordingly, the court did not commit clear error in concluding he had not abandoned criminal activity as is required for an acceptance of responsibility adjustment.

The fact questions regarding his acceptance of responsibility were of marginal importance in any case because, absent extraordinary circumstances, a defendant's obstruction of justice itself "indicates that the defendant has not accepted responsibility for his criminal conduct." *Archuletta*, 231 F.3d at 686

(quoting § 3E1.1, Note 4). We have held that "[c]onduct amounting to escape or violation of an appearance bond is certainly evidence of failure to accept responsibility, and this fact alone provides adequate foundation" for denial of the downward adjustment. *United States v. Hawley*, 93 F.3d 682, 689 (10th Cir. 1996); *see also Amos*, 984 F.2d at 1073 ("because the obstruction enhancement and acceptance of responsibility reduction are intertwined, recognition of the obstruction enhancement [provides] grounds for the denial of Defendant's acceptance of responsibility reduction"). True acceptance of responsibility for a crime includes acceptance of whatever justice society deems proper in response. The obstruction of justice inherent in Mr. Swanson's flight from custody provides alternative grounds for denying the sentencing reduction for acceptance of responsibility.

Mr. Swanson's sentence is **AFFIRMED**.