**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NICKIE NATHANIAL RICO,

    Defendant - Appellant.

No. 20-1050

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CR-00145-PAB-1)**
_____

J. Lance Hopkins, CJA Appellate Panel Member, Tahlequah, Oklahoma, for Defendant-Appellant.

Elizabeth S. Ford Milani, Assistant United States Attorney (Jason R. Dunn, United States Attorney with her on the brief), Denver, Colorado for Plaintiff-Appellee.
_____

Before **PHILLIPS**, **EBEL**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

Defendants often assert the affirmative defense of self-defense to justify conduct that results in injury to another. And as common sense tells us, self-defense means defending oneself from the threat of harm. So to invoke self-defense, one must face imminent danger that he did not cause. Defendant Nickie Nathanial Rico

faced no such danger when he fired several shots in the late hours of the night across a busy downtown Denver street. As a result of his actions, the government charged Defendant with one count of possessing a firearm as a felon in possession under 18 U.S.C. § 922(g)(1), and he pleaded guilty. At sentencing, the Presentence Investigation Report ("PSR") applied a cross-reference for attempted murder. Over Defendant's objection, the district court concluded the PSR appropriately applied the cross-reference and sentenced Defendant to 97 months' imprisonment. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I.

Bar patrons poured onto Market Street as downtown Denver shut down for the night while Defendant and Armando Rogelio Durete ("Durete") started exchanging words with a rival gang. The verbal altercation began in a parking lot near a popular restaurant at 15th Street. Gerald Wright ("Wright") stood on the other side of the street. Defendant shouted expletives and threw gang signs. Either Defendant or Durete yelled, "Who wants to get painted?" while holding a gun in his hand, and the other lifted his shirt to show a gun in the waistband of his pants. As tensions rose, a security guard nearby saw Defendant kneel behind a taco truck, display a firearm, and fire the first several shots across Market Street toward a group of people near Wright. Wright fired several shots back. One shot from Defendant's direction struck Wright in the leg causing serious bodily injury. Another shot struck an innocent bystander in the back. And Defendant suffered a gunshot wound to his thumb and another to his arm. After the shooting, Defendant and Durete ran back to

2

Defendant's vehicle in the parking lot. Defendant placed the firearm on the front seat, and later testing confirmed Defendant's DNA on the firearm.

The government charged Defendant with one count of possession of a firearm as a prohibited person under 18 U.S.C. § 922(g). Ordinarily, that would have resulted in a United States Sentencing Guideline ("Guidelines" or "U.S.S.G.") range of 24 to 30 months' imprisonment. But here, the PSR concluded Defendant faced a Guidelines range of 78 to 97 months' imprisonment. To arrive at this range, the PSR applied U.S.S.G. § 2K2.1(c)(1)(A) and § 2X1.1 to cross-reference the substantive offense committed with the firearm—attempted murder.[1] Defendant objected to this particular application of the Guidelines, contending the government failed to prove he did not act in self-defense.

The district court concluded Defendant's conduct amounted to attempted murder and adopted the PSR's offense level calculation. Defendant received 97 months' imprisonment.

---

[1] U.S.S.G. § 2K2.1(c)(1) provides that "if the defendant used or possessed any firearm . . . cited in the offense of conviction in connection with the commission or attempted commission of another offense . . . apply § 2X1.1 in respect to that other offense, if the resulting offense level is greater than that determined above." In turn, § 2X1.1(c)(1) provides that "when an attempt . . . is expressly covered by another offense guideline section, apply that guideline section." The Guidelines expressly cover the attempted murder offense in § 2A2.1(a) establishing the base offense level at 27. Section 2A2.1(b)(1)(B) imposes a 2-level increase when a victim sustains a serious bodily injury. And when a defendant accepts responsibility, a PSR can apply a 3-level decrease. The PSR calculated Defendant's final offense level at 26, combined it with his criminal history category of III, and arrived at the Guideline range at issue here: 78 to 97 months' imprisonment.

## II.

"We review the factual findings underlying a district court's sentencing determination for clear error and review the underlying legal conclusions de novo." United States v. Hooks, 551 F.3d 1205, 1216 (10th Cir. 2009) (citing United States v. Swanson, 253 F.3d 1220, 1222 (10th Cir. 2001)).  Clear error exists when a factual finding lacks any factual support in the record, or after reviewing the evidence, the record convinces us the district court made a mistake. Id. (citation omitted).  And we give "due deference to the district court's application of the Guidelines to the facts."  United States v. Sells, 541 F.3d 1227, 1235 (10th Cir. 2008) (citing United States v. Wolfe, 435 F.3d 1289, 1295 (10th Cir. 2006)).

## III.

Defendant contends the district court incorrectly found that he did not act in self-defense, and therefore erred in applying the Guideline enhancement for attempted murder.  Defendant also contends that Colorado, and not federal, self-defense law applies.  We need not decide which law applies because Defendant loses under either law.[2]

---

[2] Defendant also insists the government needed to show Defendant had not acted in self-defense by clear and convincing evidence because the enhancement had a dramatic effect citing United States v. Hymas, 780 F.3d 1285 (9th Cir. 2015).  But we recently declined to adopt such a standard—thus foreclosing the issue.  See United States v. Robertson, 946 F.3d 1168, 1171–72 (10th Cir. 2020) (citations omitted).  And the district court judge determined that even under a clear and convincing standard his decision remained the same.  ROA Vol. III at 35.  So not only does the clear and convincing standard not apply, but also the district court concluded the facts met it.

Under federal law, "[a] person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." United States v. Toledo, 739 F.3d 562, 567 (10th Cir. 2014) (citations omitted). So self-defense only requires the defendant reasonably believe he needed to use deadly force in that context. Id. Colorado allows a person to use physical force to defend himself from what "he reasonably believes to be the use or imminent use of unlawful physical force by that other person." Colo. Rev. Stat. Ann. § 18-1-704(1). And an initial aggressor who does not effectively withdraw and communicate that withdrawal cannot argue self-defense under Colorado law. Colo. Rev. Stat. Ann. § 18-1-704(3)(b). Defendant asserts Wright drew his gun first. Thus, Defendant argues the district court erred in finding that he did not act in self-defense. But Defendant fails to support that assertion with record evidence. In fact, the record supports the district court's factual finding that the evening's events did not trigger a reasonable belief that Defendant needed to use deadly force in self-defense.

The district court found Defendant's actions ultimately provoked the gunfight in downtown Denver as the streets overflowed with bar patrons. And in that gunfight, Defendant shot multiple shots directly at someone. Defendant asks us to infer that Wright's conduct supports the assertion that he was the initial aggressor. Defendant mentions that Wright fled the scene, did not report the shooting, and did not seek medical attention at the nearest hospital. We cannot oblige for two reasons. First, Wright's conduct does not necessarily suggest guilt. And second, the record

5

supports the district court's conclusion that Defendant acted first. Defendant flashed his weapon, threw gang signs in the parking lot, and yelled inflammatory comments at the rival gang before any shots fired. Record evidence also contains the testimony of a security guard that Defendant fired the first shots and Defendant's own statement that Wright *returned* fire. Moreover, no allegation exists in the record that Wright threatened Defendant by the verbal altercation. So abundant facts in the record support the district court's conclusion that Defendant cannot claim self-defense because Defendant's actions provoked the conflict. Nor do the events suggest Defendant had a reasonable belief that he needed to use deadly force. And we do not find clear error when ample evidence in the record supports the district court's factual finding. See Hooks, 551 F.3d at 1217.

Because the record shows the district court did not clearly err in finding Defendant cannot claim self-defense, we conclude the district court did not err by applying the sentencing enhancement under the Guidelines.[3]

AFFIRMED.

---

[3] Defendant also contends that he lacked the requisite mens rea to satisfy the state attempted murder offense because he acted in self-defense when Wright drew his weapon first. Defendant fails to adequately brief this argument, so we consider it waived. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) (citations omitted). ("Arguments inadequately briefed in the opening brief are waived[.]").