**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JACKSON BURLEY COOMBS,

    Defendant - Appellant.

No. 19-8036
(D.C. No. 2:18-CR-00148-NDF-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.
_____

Jackson Coombs challenges the reasonableness of his sentence. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On the night of July 28, 2018, Coombs assaulted M.C. in a women's restroom

in Yellowstone National Park. When M.C. entered the restroom, she noticed that

someone was in one of the stalls—a pair of black cowboy boots was visible beneath

the stall partition. The boots were facing the wall, not the door of the stall. Getting a

"weird feeling," M.C. entered the stall farthest from the occupied stall. As M.C.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

finished using the restroom, Coombs—who was wearing the cowboy boots—crossed the restroom to M.C.'s stall, began pounding on the door, and battered it open.

Coombs had wrapped his face in toilet paper, and he held a can of bear spray in one hand. He attacked M.C., spraying her in the face and eyes with the bear repellent and punching her in the face and head. Coombs wore several large rings, which worsened the blows. M.C. screamed for help as Coombs beat her to the floor and straddled her. Attempting to escape, M.C. tried to squeeze under the wall of the stall into the adjacent stall. Hearing her screams, M.C.'s boyfriend, W.L., entered the women's restroom and pulled Coombs off M.C. M.C. escaped the restroom while W.L. and Coombs fought. Coombs bit W.L. in the chest and forearm, but W.L. was ultimately able to wrestle Coombs to the floor. With the help of a passerby who came to his assistance, W.L. kept Coombs pinned to the ground until law enforcement arrived and placed him in handcuffs.

Coombs was charged and indicted for two counts of assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) and one count of assault resulting in serious injury under 18 U.S.C. § 113(a)(6). He pled guilty to one count of assault with a dangerous weapon and to the lesser-included offense of simple assault. Prior to sentencing, the probation office issued a Presentence Investigation Report ("PSR"), which was later revised after Coombs filed several objections. The revised PSR described Coombs' previous criminal history and history of drug abuse, particularly of alcohol. Applying a two-level enhancement under the United States Sentencing Guidelines ("U.S.S.G.") § 2A2.2(b)(1) for more than minimal planning in the

2

commission of the aggravated assault, the revised PSR recommended a term of imprisonment of 70 to 87 months. Coombs objected to the enhancement, contending that he was too intoxicated to more than minimally plan the crime. He submitted medical testimony regarding his level of intoxication at the time he assaulted M.C. and argued that the PSR overstated his criminal history. Based on these objections, Coombs sought a sentence in the 33- to 41-month range.[1]

The district court agreed with the probation office that the correct guidelines imprisonment range for Coombs' sentence was 70 to 87 months. After considering Coombs' objections and hearing witness testimony, the court sentenced Coombs to 78 months' imprisonment, followed by three years' supervised release, and ordered him to pay $2,199 in restitution for his victims' injuries. On appeal, Coombs challenges the court's application of the more-than-minimal-planning enhancement to his sentence, and he contends that his sentence is substantively unreasonable.

**II**

We review a district court's sentencing decision for reasonableness. "[R]easonableness review has two aspects: procedural and substantive." United States v. Cookson, 922 F.3d 1079, 1091 (10th Cir. 2019). "Review for procedural reasonableness focuses on whether the district court committed any error in calculating or explaining the sentence." United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009). Substantive reasonableness addresses "whether the length of

---

[1] Coombs erroneously states in his opening brief that he sought a sentence in the 31- to 41-month range. This discrepancy is immaterial to our analysis.

the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008) (quotation omitted). A sentence within the correctly calculated guidelines range is presumed to be substantively reasonable. United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006).

When reviewing a sentence for reasonableness, we apply "a deferential abuse of discretion standard." United States v. Haley, 529 F.3d 1308, 1311 (10th Cir. 2008). We review the district court's underlying factual findings in support of a sentencing decision for clear error and its legal determinations de novo. Kristl, 437 F.3d at 1054. We accept a district court's factual findings "unless the record does not support them or, after reviewing the record, we are left with the definite and firm conviction that a mistake has been made." United States v. Archuletta, 231 F.3d 682, 684 (10th Cir. 2000) (quotation omitted). We will not reverse a district court's sentencing decision unless it is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Muñoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008) (quotation omitted).

## A

Coombs argues the district court procedurally erred by applying the more-than-minimal-planning enhancement to his sentence. Section 2A2.2(b)(1) of the United States Sentencing Guidelines provides for a two-level enhancement if an aggravated assault involved "more than minimal planning," meaning it involved "more planning than is typical for commission of the offense in a simple form" or

4

"significant affirmative steps were taken to conceal the offense."  U.S.S.G. § 2A2.2(b)(1) cmt. n.2 (2018).  Actions such as "luring a victim to a specific location" or "wearing a ski mask to prevent identification" constitute more than minimal planning to commit an aggravated assault, but merely waiting to commit the offense until no witnesses are present is not enough.  Id.

Coombs argues that the district court erred as a matter of law in applying the enhancement because his crime "was not complex, did not involve significant affirmative steps [taken] to conceal the crime, and did not involve complicated criminal activity considered to be more blameworthy and deserving of greater punishment than the commission of the offense in a 'simple' form."  To support this argument, he cites numerous Tenth Circuit cases involving fraud or theft schemes in which we applied the enhancement.  He asserts that these cases demonstrate that the level of planning necessary to apply the more-than-minimal-planning enhancement is higher than the level of planning typically present in aggravated assault cases.  Similarly, Coombs cites several Fifth Circuit cases in which the enhancement was applied in the aggravated assault context, but he contends that the facts of these cases exhibit significantly more planning than his assault of M.C.  Finally, Coombs points to statistical evidence that the more-than-minimal planning enhancement is seldom applied in aggravated assault cases nationwide and has not been applied in this circuit.

These arguments do not help Coombs.  Section 2A2.2(b)(1) expressly provides for the application of the enhancement to aggravated assault sentences.  Thus, the

5

Sentencing Commission has clearly approved its applicability in appropriate aggravated assault cases. The mere fact that the more-than-minimal-planning enhancement is applied more frequently to other crimes is legally irrelevant—it does not render impermissible the application of the enhancement when the requirements of § 2A2.2(b)(1) are met.

Nevertheless, Coombs implies that the more-than-minimal-planning enhancement is inapplicable in aggravated assault cases because district courts did not apply the enhancement in several such cases in Wyoming. See United States v. Duran, 127 F.3d 911 (10th Cir. 1997); United States v. Montoya, 85 F.3d 641 (10th Cir. 1996); United States v. Jenkins, 17 F. App'x 769 (10th Cir. 2001) (unpublished); United States v. Yellowbear, 382 F. App'x 715 (10th Cir. 2010) (unpublished). But none of these cases so much as mention the enhancement. Similarly, the Fifth Circuit cases on which Coombs relies do little to support his contention that the more-than-minimal-planning enhancement does not apply, as a matter of law, to his assault of M.C. These cases merely identify particular facts the reviewing court held sufficient, but not necessary, to support application of the enhancement; they do not purport to identify a minimum level of planning required under § 2A2.2(b)(1). Accordingly, Coombs' reliance on these various cases is unavailing. See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC, 843 F.3d 1225, 1242 (10th Cir. 2016) (questions "neither brought to the attention of the court nor ruled upon[] are not to be considered as having been so decided as to constitute precedents" (quotation omitted)); Merrifield v. Bd. of Cty. Comm'rs for Cty. of Santa Fe, 654

6

F.3d 1073, 1084 (10th Cir. 2011) ("It is elementary that an opinion is not binding precedent on an issue it did not address.").

Additionally, Coombs argues that the district court legally erred in applying the enhancement to his sentence because the enhancement applies only to complex criminal activity. Citing Archuletta, Coombs asserts the more-than-minimal-planning enhancement is designed to target criminals who engage in "complicated criminal activity because their actions are considered more blameworthy and deserving of greater punishment than a perpetrator of a simpler version of the crime." 231 F.3d at 686. Coombs latches onto the word "complicated" and asserts that his crimes were "uncomplicated assault[s]." But "complicated" is a relative term dependent on comparison between the underlying criminal conduct for which the defendant is being sentenced and the simplest form of the offense. See, e.g., United States v. Moore, 225 F.3d 637, 642 (6th Cir. 2000) ("It is not necessary that a crime suggests planning in its most deliberative form; rather, it is sufficient if the evidence suggests merely that the crime was not committed in its simplest form."); United States v. Bean, 18 F.3d 1367, 1370 (7th Cir. 1994), abrogated on other grounds by United States v. Vizcarra, 668 F.3d 516, 523 (7th Cir. 2012) ("The 'offense' is the crime of which the defendant has been convicted, not of the particular way in which he committed it."). Archuletta involved bank fraud, which "is committed by one who knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution[] or (2) to obtain any of the moneys, funds or other property under the custody or control of a financial institution by means of false or fraudulent

7

pretenses." 231 F.3d at 684 (quoting 18 U.S.C. § 1344). By contrast, the government contends—and Coombs does not dispute—that the simple form of his crime required only that on a particular date, at a particular location, he knowingly assaulted another individual with a dangerous weapon with the intent to do bodily harm. See § 113(a)(3). Thus, the simple form of bank fraud is much more complex than the simple form of aggravated assault with a deadly weapon. And, as the Sentencing Guidelines indicate, merely donning a ski mask in an attempt to conceal one's identity constitutes more than minimal planning to commit an aggravated assault. § 2A2.2(b)(1) cmt. n.2. Accordingly, the district court did not legally err in applying the more-than-minimal-planning enhancement to Coombs' assault simply because aggravated assault is not "complicated criminal activity." What matters is whether Coombs more than minimally planned his assault of M.C, not whether his offense was "complicated."

Finally, with respect to the district court's factual findings, Coombs challenges several inferences the court drew from undisputed facts in the record. For example, it is undisputed that Coombs was in a stall in the women's restroom when M.C. entered the restroom, but Coombs challenges the district court's inference that he was waiting in the stall and knew he was in the women's restroom. Similarly, Coombs challenges the district court's inference that because he wrapped his face in toilet

8

paper, he attempted to conceal his identity.[2]  According to Coombs, his attack on M.C. was spontaneous and did not involve significant affirmative steps to conceal the offense.  The district court found otherwise, and we discern no clear error in that determination.

Coombs presented to the district court a narrative that he was drunk and hallucinating when he assaulted M.C.  The district court considered and rejected that narrative.  It noted that not even Coombs' doctor "would go so far" as to suggest his actions were the product of hallucination.  Moreover, the record reflects that the emergency room doctor who examined Coombs after the attack noted that "[h]e has been drinking this evening, at least a fifth of vodka.  He also uses oxycodone and Adderall for ADHD and has taken both of those this evening.  He is actually quite awake and alert for having had these sedating medications.  He clearly states that he did not have a loss of consciousness."  In light of all the record evidence, the court determined that the most logical inferences were that Coombs "knew he was in the wrong restroom, that he battered his way into another stall where someone was there not presenting any threat, and he concealed his identity during the course."  The district court determined this "goes beyond the simple form of assault and is more than minimal planning."

---

[2] Coombs asserts he did not take significant affirmative steps to conceal the assault because he did not wear a ski mask and did not succeed in concealing his identity.  But wearing a ski mask is merely one example constituting more than minimal planning, and the fact that Coombs—as he phrased it—"ineptly wrapped toilet paper around the lower part of his face" does not mean he did not attempt to conceal his identity.

Contrary to Coombs' contention, these are reasonable inferences drawn from undisputed facts in the record. In essence, Coombs complains that the district court found persuasive an explanation different from the one he advanced. But where, as here, there is "a range of possible outcomes the facts and law at issue can fairly support," the reviewing court does not "pick and choose among them" but rather "defer[s] to the district court's judgment so long as it falls within the realm of these rationally available choices." United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007). Because the record supports the district court's factual findings, the court did not clearly err by drawing inferences contrary to the ones Coombs would have had it draw.

For these reasons, we conclude the district court did not commit procedural error in applying the more-than-minimal-planning enhancement. Accordingly, we conclude that the district court correctly determined the applicable guidelines imprisonment range was 70 to 87 months.

**B**

Turning to substantive reasonableness, we conclude that Coombs has failed to rebut the presumption that his sentence is substantively reasonable. As explained above, the district court did not commit procedural error in calculating the guidelines range for his sentence to be 70 to 87 months. Because the court's ultimate sentence of 78 months' imprisonment falls within this range, it is presumptively reasonable. Kristl, 437 F.3d at 1054.

Substantive reasonableness addresses "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." Verdin-Garcia, 516 F.3d at 895. Under § 3553(a)(6), sentencing courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Relying on statistical data regarding the infrequent application of the more-than-minimal-planning enhancement in aggravated assault cases, Coombs argues that his sentence is substantively unreasonable because it is "well above the national average" and thus violates § 3553(a)(6). But § 3553(a)(6)'s consideration of unwarranted sentence disparities is but one factor that a district court must balance against the other § 3553(a) factors in arriving at an appropriate sentence. See United States v. Martinez, 610 F.3d 1216, 1228 (10th Cir. 2010). Moreover, Coombs admits he does not know whether the enhancement was applied in any of the cases comprising the data set on which he relies for his purported average sentence. Nor does he provide any information about the underlying facts of the aggravated assault cases making up that data set. Without more, Coombs has failed to show that his sentence is similar to the cases he asserts are comparable or that any disparity between his case and these other cases is "unwarranted." § 3553(a)(6).

Coombs also contends that the district court placed excessive weight on § 3553(a)(2)'s instruction to consider "the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes, and provide rehabilitation." Specifically, he takes issue

11

with the court's assessment that he had repeatedly received lenient sentences for troubling conduct and was not deterred by these sentences from assaulting M.C. Yet under our deferential standard of review, we must affirm "[a]s long as the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable." Martinez, 610 F.3d at 1229 (quotation omitted).

Coombs has not persuaded us that his sentence was arbitrary, capricious, or manifestly unreasonable. He asserts that his crime was less serious than other aggravated assault crimes committed in Wyoming, but this bare comparison does not demonstrate an unreasonable application or balancing of the § 3553(a) factors. Similarly, he attempts to minimize aspects of his criminal history, but he fails to explain how the court's assessment of his criminal history is erroneous. Instead, he complains about the court's "censorious tone" and insinuates that the sentencing judge had a "personal and perhaps socio-economic connection to [M.C.]" These conclusory and unfounded assertions fail to rebut the presumption that Coombs' sentence is substantively reasonable.

Finally, Coombs argues that his sentence is longer than necessary to achieve the goals of sentencing. See § 3553(a). But he fails to address the district court's thorough explanation as to why the 78-month sentence imposed was appropriate. Instead, he asserts without elaboration that a 51-month sentence is more than adequate to achieve the statute's purposes. Again, without more, Coombs has failed to rebut the presumption that his sentence is substantively reasonable.

12

Accordingly, we conclude the district court's sentencing decision was not substantively erroneous.

## III

**AFFIRMED.**

Entered for the Court

Carlos F. Lucero
Circuit Judge